THE COMMISSION ON ETHICS OF THE STATE OF
NEVADA, Appellant, *v.* WARREN B. HARDY II, in His
Official Capacity as Nevada State Senator for Clark
County Senatorial District No. 12, Respondent.

No. 53064

July 30, 2009

212 P.3d 1098

*Nevada Commission on Ethics* and *Adriana G. Fralick,* Carson
City, for Appellant.

*Legislative Counsel Bureau Legal Division* and *Brenda J.
Erdoes,* Legislative Counsel, *Eileen G. O'Grady,* Chief Deputy
Legislative Counsel, and *Kevin C. Powers,* Senior Principal Deputy
Legislative Counsel, Carson City, for Respondent.

*Jacob L. Hafter,* Las Vegas, for Amicus Curiae Nevada Center
for Public Ethics.

Before HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.

## OPINION

*Per Curiam:*

In this appeal, we consider whether appellant Nevada Commission on Ethics has the authority to conduct administrative proceedings regarding alleged ethical violations purportedly committed by respondent Senator Warren B. Hardy II. Specifically, we address the Commission's authorization to entertain allegations that Senator Hardy violated NRS 281A.420 by failing to adequately disclose an alleged conflict of interest regarding a piece of legislation and by failing to abstain from voting on that bill. In this regard, this appeal sets the very nature of the Commission's jurisdiction before us for evaluation, and calls into question whether the Legislature can delegate to the Commission the power to discipline legislators for alleged disorderly conduct. In particular, since the Nevada Constitution confers that power on each house of the Legislature, we must determine whether the Legislature's decision to pass that power to the Commission constitutes an unconstitutional delegation of legislative power. We further evaluate whether the Legislature, by enacting the Ethics in Government laws and creating the Commission, waived any claim to protection under the separation of powers doctrine.

Based on our review of the Nevada Constitution and relevant legal authority, we conclude that to the extent that a legislator's conduct, resulting in a disciplinary proceeding, involves a core legislative function such as voting and, by extension, disclosure of potential conflicts of interest prior to voting, any discipline of the legislator is a function constitutionally committed to each house of the Legislature by Article 4, Section 6 of the Nevada Constitution, and that this power cannot be delegated to another branch of government. We further hold that the Commission is an agency of the executive branch, and thus, any delegation to the Commission of each house of the Legislature's power to discipline its members for disorderly conduct involving core legislative function activities runs afoul of the separation of powers doctrine and is therefore unconstitutional. Finally, we hold that the Legislature cannot waive consti-

tutionally based structural protections such as the separation of powers doctrine. As a result, we affirm the district court's decision and conclude that the Commission is barred from conducting any further proceedings against Senator Hardy.

## NEVADA COMMISSION ON ETHICS AND ETHICS LAWS

Because this appeal requires us to evaluate the Commission itself, we begin our discussion by providing a brief overview of the Commission and the ethics laws relevant to this appeal.

### Commission on Ethics

The Commission on Ethics is charged with investigating and taking appropriate action regarding alleged violations of Nevada ethics laws by public officers and employees as well as former public officers and employees.[1] NRS 281A.280. Prior to the Commission's formation in 1985, two separate ethics commissions existed, one for the legislative branch and one for the executive branch. In 1985, both of those commissions were combined to form the current Commission on Ethics. See Hearing on S.B. 345 Before the Senate Comm. on Government Affairs, 63d Leg. (Nev., April 24, 1985) (introducing and explaining the history of the ethics commission and the intention of S.B. 345 to combine the Executive Ethics Commission and the Legislative Ethics Commission into one Commission on Ethics). The Commission is composed of eight members—four members appointed by the governor and four members appointed by the legislative commission. NRS 281A.200 (appointing Commission members).

Pursuant to NRS 281A.280, the Commission has jurisdiction over ethics violations purportedly committed by most public officers.[2] A "public officer" is defined as "a person elected or appointed to a position which is established by the Constitution of the State of Nevada . . . and which involves the exercise of a public power, trust or duty." NRS 281A.160(1). NRS 281A.160(1) defines "the exercise of a public power, trust, or duty" as official actions involving "substantial and material exercise of administrative dis-

---

[1]Nevada's ethics laws are contained in Chapter 281A of the Nevada Revised Statutes. We note that Chapter 281A has recently been amended to add language outlining the ethics laws' impact on state legislators' rights and responsibilities when performing their legislative functions. See generally NRS Chapter 281A (amended 2009). The instant matter involves the application of the previous version of the ethics laws, the version in effect when the underlying ethics proceeding against Senator Hardy was initiated.

[2]Supreme court justices, judges, officers of the court system, and court employees are specifically excluded from the Commission's jurisdiction. See NRS 281A.160(2)(a); NRS 281A.150.

cretion in the formation of public policy," "[t]he expenditure of public money," and "[t]he administration of laws and rules of the State, a county, or a city." In light of this language, it is clear that, for the purposes of the ethics laws, the term "public officer" encompasses members of the state senate and the assembly.

Under NRS 281A.280(1), the Commission's authority to investigate and take action regarding alleged violations of the ethics laws may be initiated by an individual. Any individual may also request an opinion regarding alleged ethical violations of a public officer.[3] After the Commission has investigated an ethics allegation, the Commission may issue an opinion applying the statutory ethical standards to "a given set of facts or circumstances." NRS 281A.440(2). Additionally, if the Commission determines that an ethics violation has been "willful," the Commission may impose a civil penalty for such a violation. NRS 281A.480.

### Nevada ethics laws

Under Nevada's ethics laws, a public officer may not vote or abstain from voting upon any matter on which the officer has accepted a gift, that would reasonably be shaped by the officer's obligation in a private capacity to the interest of others, or that the officer has a pecuniary interest in, unless he or she publicly discloses to other members of the body to which the officer belongs, the gift, commitment, or interest. NRS 281A.420(4). For members of the Legislature, once disclosure is made pursuant to NRS 281A.420(4), the legislator may file a written conflict of interest disclosure statement with the Legislative Counsel Bureau prior to voting on such matters. *See* NRS 281A.420(6). After the written disclosure statement is made, the legislator need not orally disclose the interest when the matter is again considered by the Legislature. *Id.* With this framework, we turn to the present matter before us.

### FACTS AND PROCEDURAL BACKGROUND

This case began when the Commission instituted administrative proceedings against Senator Hardy stemming from a citizen's complaint to the Commission based on allegations of ethics violations that involve Senator Hardy's voting on legislation during the 2007 legislative session. The ethics complaint, in relevant part, asserted that Senator Hardy violated NRS 281A.420, by failing to adequately disclose an alleged conflict of interest regarding Senate Bill 509 and

---

[3]The ethics laws also allow the Commission to render an opinion at the request of a public officer or employee who is seeking guidance on questions related "to the propriety of his own past, present or future conduct as an officer or employee." *See* NRS 281A.440(1).

by failing to abstain from the voting on that bill.[4] NRS 281A.420(2) provides, in relevant part that

> a public officer shall not vote upon or advocate the passage or failure of, but may otherwise participate in the consideration of, a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by: (a) [h]is acceptance of a gift or loan; (b) [h]is pecuniary interest; or (c) [h]is commitment in a private capacity to the interests of others.

Senator Hardy moved the Commission to dismiss the administrative proceeding or for summary judgment on separation of powers and legislative immunity grounds. The Commission subsequently denied Senator Hardy's motion. Although an administrative hearing was scheduled to address the allegations against him, Senator Hardy filed a petition for judicial review of the Commission's denial of his motion to dismiss or for summary judgment in the district court. He also filed an emergency motion for a preliminary injunction.

Following a hearing on the petition and motion, the district court granted Senator Hardy's petition for judicial review of the Commission's decision and entered a permanent injunction preventing the Commission from conducting any further proceedings against Senator Hardy. The district court based its decision on several grounds. The court found that the Commission was barred as a matter of law from conducting administrative proceedings against Senator Hardy because of the constitutional doctrines of separation of powers and legislative immunity under Article 3, Section 1 of the Nevada Constitution. In reaching its determination, the district court found that the alleged ethics violations involved legislative actions taken by Senator Hardy within the sphere of legitimate legislative activity, and the court concluded that those legislative actions were constitutionally protected. The court further found that the Nevada Senate was the only governmental entity that could question Senator Hardy regarding those legislative actions and that the Commission, an agency of the executive branch, would violate the separation of powers doctrine by questioning Senator Hardy regarding the alleged ethics violations. The court also determined that there had not been an institutional legislative immunity waiver, through the enactment of NRS 281A.420, of the Legislature's constitutional right to discipline its members. Finally, the district court concluded that the Legislature's standing rules, regarding the disclosure of conflicts, voting, and abstention, took precedence over NRS 281A.420. The Commission subsequently filed an appeal from the district court's

---

[4]The record shows that in his private capacity, Senator Hardy serves as president of the Associated Builders and Contractors of Southern Nevada (ABC-LV). Senate Bill 509 related to lease-purchase and installment-purchase agreements that would have affected ABC-LV's members.

order. Because the issues presented pertained to the 2009 legislative session, this court granted Senator Hardy's motion to expedite briefing and argument and provided a memorandum disposition, with the formal disposition to follow. *See Ex Rel. Penrose v. Greathouse*, 48 Nev. 419, 233 P. 527 (1925).

## DISCUSSION

Our consideration of the issues presented to us in this appeal begins with a brief examination of the separation of powers doctrine. We then examine Article 4, Section 6 of the Nevada Constitution to determine whether the separation of powers doctrine bars the Legislature from delegating this authority to another branch of government. After determining that the Legislature may not delegate its disciplinary authority to another governmental branch, we evaluate the Commission itself to determine its position in Nevada's tripartite government system. Determining that the Commission is part of the executive branch, we conclude by addressing whether the Legislature waived the protections of the separation of powers doctrine by creating the Commission and granting it authority to discipline legislators for ethics violations.

### Standard of review

The decision of whether to grant a permanent injunction rests in the district court's sound discretion and we will not overturn that decision unless it is an abuse of discretion. *See Director, Dept. of Prisons v. Simmons*, 102 Nev. 610, 613, 729 P.2d 499, 502 (1986), *overruled on other grounds by Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 787 P.2d 772 (1990). Nonetheless, because the facts surrounding the underlying issues are undisputed, the district court's permanent injunction will be reviewed de novo. *See Secretary of State v. Give Nevada A Raise*, 120 Nev. 481, 486 n.8, 96 P.3d 732, 735 n.8 (2004). Moreover, in the context of reviewing an administrative decision made under the Administrative Procedure Act, this court, like the district court, reviews purely legal questions de novo. *Garcia v. Scolari's Food & Drug*, 125 Nev. 48, 56, 200 P.3d 514, 520 (2009); *see also* NRS 233B.135(3).

### The separation of powers doctrine prohibits one branch of government from impinging on the powers of another

States are not required to structure their governments to incorporate the separation of powers doctrine, *Sweezy v. New Hampshire*, 354 U.S. 234, 255 (1957), but Nevada has embraced this doctrine and incorporated it into its constitution. Nev. Const. art. 3, § 1. The

purpose of the separation of powers doctrine is to prevent one branch of government from encroaching on the powers of another branch. *Clinton v. Jones*, 520 U.S. 681, 699 (1997). In the United States Constitution, separation of powers is expressed by the discrete treatment of the three branches of government in Articles I (legislative), II (executive), and III (judicial). *Buckley v. Valeo*, 424 U.S. 1, 124 (1976). The Nevada Constitution mirrors this structure in Articles 4, 5, and 6.

The Nevada Constitution vests the state's legislative power in a Legislature comprised of two bodies, the Senate and Assembly. Nev. Const. art. 4, § 1. Specifically, Article 4, Section 1 provides that ''[t]he Legislative authority of this State shall be vested in a Senate and Assembly which shall be designated 'The Legislature of the State of Nevada.' '' The powers of the executive branch are outlined in Article 5 of the Nevada Constitution, with the supreme executive power granted to the Governor. Nev. Const. art. 5, § 1. The powers of the judicial branch are set forth in Article 6 of the Nevada Constitution.

Unlike the United States Constitution, which expresses separation of powers through the establishment of the three branches of government, *see Buckley*, 424 U.S. at 124, Nevada's Constitution goes one step further; it contains an express provision prohibiting any one branch of government from impinging on the functions of another. *Secretary of State v. Nevada State Legislature*, 120 Nev. 456, 466, 93 P.3d 746, 753 (2004) (noting that Nevada's separation of powers provision is contained in Article 3, Section 1 of the Nevada Constitution and that separation of powers ''works by preventing the accumulation of power in any one branch of government''). Specifically, Article 3, Section 1(1) provides that

> [t]he powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive;—and Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

*Accord Blackjack Bonding v. Las Vegas Mun. Ct.*, 116 Nev. 1213, 1218, 14 P.3d 1275, 1279 (2000) (recognizing that the Nevada Constitution establishes that ''each branch of government is considered to be co-equal, with inherent powers to administer its own affairs'').

Based on these separation of powers principles, we begin our application of the doctrine to this case by examining Article 4, Section 6 of the Nevada Constitution to determine whether the power to discipline legislators is a function constitutionally committed to each house of the Legislature and whether any delegation of that

power to another branch of government unconstitutionally violates separation of powers principles. We then evaluate the Commission itself, to determine its position within the three branches of Nevada's government.

*The discipline of legislators is a function constitutionally committed to each house of the Legislature that cannot be delegated to another branch of government*

The Commission contends that the separation of powers doctrine has not been violated because the Legislature properly delegated its power to discipline its members to the Commission for the purpose of enforcing Nevada's ethics laws. Senator Hardy maintains that the separation of powers doctrine is implicated because the Nevada Constitution clearly mandates that the regulation and discipline of legislators is a function constitutionally committed to each house of the Legislature. Senator Hardy also argues that the Commission is an agency of the executive branch, and thus the delegation of this authority to the Commission would violate the separation of powers doctrine. The district court agreed with Senator Hardy's argument, finding that the discipline of legislators is a constitutionally committed function of the Legislature. The court further determined that the Commission is an executive branch agency, and that under the separation of powers doctrine, it could not infringe on the Legislature's constitutionally committed function. We agree with the district court.

This court has recognized that separation of powers principles are "particularly applicable when a constitution expressly grants authorization to one branch of government." *Secretary of State*, 120 Nev. at 466, 93 P.3d at 753. Article 4, Section 6 of the Nevada Constitution vests each house of the Legislature with the authority to regulate the conduct of its own members:

> Each House shall judge the qualifications, elections and returns of its own members, choose its own officers (except the President of the Senate), determine the rules of its proceedings and may punish its members for disorderly conduct, and with the concurrence of two thirds of all the members elected, expel a member.

This provision expressly grants the authority to discipline legislators for disorderly conduct to the individual houses of the Legislature, thus the power to discipline legislators for disorderly conduct is a function constitutionally committed to each house of the Legislature. *See Brady v. Dean*, 790 A.2d 428, 432 (Vt. 2001) (recognizing a legislative body's "exclusive constitutional prerogative" to judge the qualifications of its own members); *see also Secretary of State*, 120 Nev. at 466, 93 P.3d at 753 (recognizing that the Nevada Constitution reserves the power to judge the qualifications of its members to

each house of the Legislature). The issue then turns on whether the Legislature can delegate this authority.

While not directly on point, this court's decision in *Dunphy v. Sheehan*, 92 Nev. 259, 549 P.2d 332 (1976), is instructional. In *Dunphy*, this court addressed the separation of powers doctrine as it related to the application of a previous version of the ethics laws and whether it was unconstitutional because it did not apply to members of the judicial branch. *Id.* at 265-66, 549 P.2d at 336-37. Noting that the Legislature had excluded members of the judiciary from being subject to the ethics laws out of deference to the separation of powers doctrine, the court nonetheless concluded that this exclusion was constitutionally mandated. *Id.* Specifically, the court stated that under the separation of powers doctrine, the legislative and executive branches may not exercise powers belonging to the judicial branch. *Id.* at 265, 549 P.2d at 336. And, concluding that the function of the judicial branch is "the administration of justice" and that "[t]he judiciary, as a coequal branch of government, possesses the inherent power to protect itself and administer its affairs," the court held that "[t]he promulgation of a Code of Judicial Ethics is a measure essential to the due administration of justice and within the inherent power of the judicial department of this state." *Id.* at 266, 549 P.2d at 336-37.

In essence, the *Dunphy* court relied on the importance of the power to promulgate an ethics code specifically applicable to the judicial department's function—the administration of justice—and the inherent powers of the judicial branch to conclude that the separation of powers principles barred the application of the ethics laws to the judiciary. Indeed, this court reached this conclusion even though, at the time the *Dunphy* decision was issued, no constitutional provision expressly reserved the power to discipline members of the judiciary to the judicial branch.[5]

Accordingly, we conclude that the Legislature may not delegate the constitutionally committed authority conferred on each house to discipline its members for disorderly conduct. What legislative actions are subject to discipline for disorderly conduct under this constitutional provision, however, is an issue we have not previously addressed.

### *The power to discipline for disorderly conduct applies to conduct undertaken in the course of engaging in core legislative function activities*

Senator Hardy maintains that the power to punish legislators for disorderly conduct extends to punishing members for conduct related to their legislative actions, such as voting. The Commission re-

---

[5]Subsequent to *Dunphy*, the Nevada Constitution was amended to establish a Commission on Judicial Discipline to hear matters relating to the fitness of judges in Nevada. *See* Nev. Const. art. 6, § 21.

sponds, in cursory fashion, by asserting that the Commission's proceedings are distinguishable from efforts to discipline legislators for disorderly conduct. Because we have not addressed what legislative actions are subject to discipline for disorderly conduct under Article 4, Section 6 of the Nevada Constitution, we turn to other courts for guidance on this issue.

### Core legislative function

In *Brady v. Dean*, the Vermont Supreme Court concluded that a challenge to a law, based on the contention that members of Vermont's House of Representatives were required to disqualify themselves from voting on that law, constituted a nonjusticiable political question. 790 A.2d 428, 432-33 (Vt. 2001). In reaching its conclusion, the court relied on Chapter 2, Section 14 of the Vermont Constitution, which provides that the House of Representatives shall have the power to " 'judge of the elections and qualifications of its own members.' "[6] *Brady*, 790 A.2d at 431 (quoting Vt. Const., ch. II, § 14). The court concluded that Chapter 2, Section 14 conferred the exclusive authority on the legislature to judge the qualifications of its members. *Id.* In that regard, the court determined that Section 14 applied to determinations as to whether members of the house were required to disqualify themselves from voting on legislation.[7] *Brady*, 790 A.2d at 431-32. As a result, the court held that a challenge to a law based on the argument that members of the house were required to disqualify themselves from voting constituted a political question. *Id.* at 432-33.

The *Brady* court noted, however, that Chapter 2, Section 14 did not immunize members of the house from all conflicts of interest oversight by the executive and judicial branches. *Id.* at 432. Nonetheless, the court concluded that, when the conduct at issue constitutes a core legislative function, constitutional and prudential concerns protect members of the house from having that conduct scrutinized by another branch of state government. *Id.* at 432-33. The court reaffirmed that voting on legislation constituted such a core legislative function.[8] *Id.* at 432. In doing so, the *Brady* court

---

[6]Chapter 2, Section 14 of the Vermont Constitution deals with the powers of Vermont's House of Representatives. The powers of the Vermont Senate are set forth in Chapter 2, Section 19, which contains an identical reservation of the power to judge the elections and qualifications of its members to the Senate as Nevada's Constitution.

[7]Unlike the Nevada Constitution, the Vermont Constitution does not contain an express reservation of the power to discipline its legislators for disorderly conduct.

[8]*See Salt Lake City v. Ohms*, 881 P.2d 844, 848 (Utah 1994) (recognizing that a legislator's act of voting on legislation is a core legislative function); *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997) (same); *Burnette v. Bre-*

recognized that voting "must remain inviolate to ensure the continued integrity and independence of [the house]." *Id.*

Although *Brady* involved an extension of the constitutionally granted power to judge members' qualifications to encompass determinations regarding whether members were required to disqualify themselves from voting on legislation, the principles set forth in *Brady* are applicable to the case before us. Specifically, *Brady*'s conclusion that Chapter 2, Section 14 shields members of the Vermont House of Representatives from scrutiny by another branch of government with regard to core legislative function activities is particularly persuasive. *Id.* at 432-33. Here, Article 4, Section 6 of the Nevada Constitution expressly grants the authority to discipline legislators for disorderly conduct to the individual houses of the Legislature. Applying *Brady* to the present case, we conclude that, to the extent that a legislator's actions are undertaken in the course of the legislator's participation in, or conduct of, a core legislative function, any discipline for purported disorderly conduct in the course of engaging in these core function activities is a function constitutionally committed to each legislative house with regard to its members that cannot be delegated to another branch of government.[9] *Id.* at 431-33. And because voting on legislation is a core legislative function, the authority to discipline legislators for disorderly conduct allegedly committed in the course of voting on legislation is also a function constitutionally committed to each house of the Legislature and cannot be delegated to another branch of the government.

### Disclosure of any potential conflicts of interest

The ethics allegations against Senator Hardy assert that he violated NRS 281A.420 by failing to adequately disclose an alleged conflict of interest regarding a piece of legislation and by failing to abstain from voting on that legislation. NRS 281A.420(2) provides that a legislator may not vote on legislation when his or her interest in that legislation presents a conflict of interest. Additionally, NRS 281A.420(4) provides that a public officer may not vote or abstain from voting upon any matter (1) on which the public officer

*desen*, 566 F. Supp. 2d 738, 745 (E.D. Tenn. 2008) (same); *Scott v. Office of Alexander*, 522 F. Supp. 2d 262, 267 (D.D.C. 2007) (same); *State v. Haley*, 687 P.2d 305, 319 (Alaska 1984) (same).

[9]In contrast, the Legislature may delegate the power to discipline with respect to conduct related to noncore legislative functions. Using the ethics laws as an example, such proceedings could include discipline for legislators who use governmental time, property, equipment, or other facilities for nongovernmental purposes (NRS 281A.400(8)), bid or enter into governmental contracts (NRS 281A.430), or accept or receive an honorarium (NRS 281A.510).

has accepted a gift, (2) that would reasonably be shaped by the officer's obligation in a private capacity to the interest of others, or (3) in which the officer has a "pecuniary interest," without publicly disclosing to other members of the legislative body, the gift, commitment, or interest. The ethics laws thus make disclosure of any potential conflicts of interest a prerequisite to voting or abstaining from voting on legislation.

Because voting is a core legislative function, *see Brady*, 790 A.2d at 432; *Ohms*, 881 P.2d at 848, and NRS 281A.420 makes disclosure necessary in order to vote or abstain from voting on legislation, the disclosure of potential conflicts in this context is, by extension, likewise a core legislative function. As concluded above, the discipline of legislators for disorderly conduct related to the core function activities of voting and disclosure of conflicts of interest is constitutionally committed to each house of the Legislature. And, on that basis, this authority cannot be delegated to another branch of the government. *Secretary of State v. Nevada State Legislature*, 120 Nev. 456, 466, 93 P.3d 746, 753 (2004); *Brady*, 790 A.2d at 431-33. Thus, our determination of whether the Legislature's delegation of authority to discipline legislators for disorderly conduct related to voting and disclosure to the Commission violates separation of powers principles turns on our evaluation of the Commission's position within Nevada's tripartite government system.

### *The district court properly determined that the Commission is an executive branch agency*

The Commission asserts that it is an independent agency with "many types of powers blended together" and contends that the legislative delegation of disciplinary power to the Commission does not violate the separation of powers doctrine. Senator Hardy responds that under Nevada law the Commission is part of the executive branch, and thus, the ethics proceedings, if allowed to go forward, would violate separation of powers principles. In addressing this issue, the district court determined that the Commission is part of the executive branch. We agree.

Departmental agencies can exist within each branch of government and exercise certain ministerial functions that appear to overlap with or duplicate the functions of another branch. *Galloway v. Truesdell*, 83 Nev. 13, 21-22, 422 P.2d 237, 243-44 (1967). In fact, this court has recognized that administrative agencies from one branch can exercise functions linked to another branch without violating the separation of powers doctrine. *See Nevada Industrial Comm'n v. Reese*, 93 Nev. 115, 119-22, 560 P.2d 1352, 1354-56 (1977) (holding that appeals officers can exercise administrative powers "that are quasi-judicial in nature without violating the separation of powers doctrine"). "Such an overlapping or duplication

of effort or function can be entirely valid so long as each can logically and legitimately trace its efforts or functions back to, and is derived from, its basic source of power." *Galloway*, 83 Nev. at 22, 422 P.2d at 243. Thus, despite the Commission's arguments to the contrary, the Commission cannot be considered an independent agency because it must have a primary connection to and derive its power to act from one of the three branches of Nevada government.[10] *Id.*

The Commission was created to "investigate and take appropriate action regarding" alleged violations of the ethics laws. NRS 281A.280(1). Upon completion of its investigation, the Commission has the authority to issue opinions interpreting and applying the ethics laws, NRS 281A.440, and to impose civil penalties. NRS 281A.480. Thus, by statute, the Commission is tasked with carrying out and enforcing Nevada's ethics laws. Under Article 5, Section 7 of the Nevada Constitution, the executive branch is charged with carrying out and enforcing the laws enacted by the Legislature. Other jurisdictions have recognized that the executive branch in their respective states has the duty to execute the laws enacted by the legislature. *See generally Phelps v. Sybinsky*, 736 N.E.2d 809, 816 (Ind. Ct. App. 2000) (stating, in relevant part, members of the executive branch have the responsibility to execute the laws of the state); *Snider v. Bd of Com'rs, Walla Walla County*, 932 P.2d 704, 708 n.3 (Wash. Ct. App. 1997) (noting that executive branch executes the laws as enacted by the legislature). Considering the powers of and the purpose behind the Commission in light of Article 5, Section 7 thus demonstrates that the Commission is part of the executive branch. Thus, although the Commission itself was created by the Legislature, the purpose for which it was created necessarily designates the Commission as an agency of the executive branch with its basic source of power provided by Article 5 of the Nevada Constitution.

Based on our discussion above, we conclude that because the Commission is an executive branch agency, any delegation to the Commission by the Legislature of the power to discipline its members with respect to core legislative functions is an unconstitutional delegation of power in violation of the separation of powers provision of the Nevada Constitution. Having reached this conclusion, we turn to our final issue—whether the Legislature waived the protec-

---

[10]Although the Commission correctly argues that it also exercises quasi-legislative functions, such as adopting regulations, *see* NRS 281A.290, and quasi-judicial functions, such as adjudicating contested ethics cases and issuing subpoenas when investigating alleged violations, *see* NRS 281A.290-.300, this argument does not affect our conclusion. As noted in *Galloway*, agencies can exist within each branch to exercise certain ministerial functions that appear to overlap with or duplicate the functions of another branch. 83 Nev. at 21-22, 422 P.2d at 243-44.

tions of the separation of powers doctrine by enacting the ethics laws.

*Structural protections such as the separation of powers doctrine cannot be waived*

The Commission contends that the Legislature's delegation of its disciplinary power to the Commission by enacting the ethics laws was an intentional institutional waiver of any constitutional protections that might bar the Commission from conducting disciplinary proceedings against Senator Hardy. Senator Hardy contends that there was no institutional waiver and that no such waiver is possible. He asserts that any conclusion that a waiver occurred would result in an unconstitutional delegation of each house of the Legislature's disciplinary responsibility. Moreover, the structural protections of the separation of powers doctrine cannot be waived. In addressing this issue, the district court agreed with Senator Hardy that any finding of an institutional waiver would "raise the specter" of an unconstitutional delegation of power to the Commission. It further noted that any such finding of waiver would create separation of powers concerns because neither the Legislature nor the executive branch can agree to waive the structural protections of separation of powers. Specifically, the district court held that "regardless of the degree of assent or acquiescence by the Legislative or Executive Department, legislation which infringes on the structural protections of separation of powers is unconstitutional." We agree.

In *Freytag v. Commissioner*, 501 U.S. 868, 878-80 (1991), the United States Supreme Court held that constitutionally based structural protections cannot be waived by either the legislative or executive branch. More specifically, in addressing the argument that it should defer to the Executive Branch's decision that a statute did not represent a legislative encroachment on the executive powers found in the Appointments Clause of Article II, Section 2 of the United States Constitution, the Court concluded that the "roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political." *Id.* at 878. As a result, the Court rejected the argument that it should defer to the Executive Branch, concluding that neither Congress nor the Executive Branch can waive such a structural protection. *Id.* at 880. In reaching this conclusion, the Court noted that " '[t]he assent of the Executive to a bill which contains a provision contrary to the Constitution does not shield [the bill] from judicial review.' " *Id.* (quoting *INS v. Chadha*, 462 U.S. 919, 942 n.13 (1983)).

This court has recognized that separation of powers "is probably the most important single principle of government." *Galloway v.*

*Truesdell*, 83 Nev. 13, 18, 422 P.2d 237, 241 (1967). Thus, considering this court's recognition of the fundamental nature of this structural protection to Nevada's tripartite system of government, guided by the Supreme Court's conclusion in *Freytag* that such structural protections cannot be waived, we conclude that the Legislature cannot, by enacting a statute that delegates certain powers to another branch of the government, waive any separation of powers violation inherent in such a delegation.

## CONCLUSION

The power to discipline its membership with respect to the core legislative function of voting and, by extension, disclosure of conflicts of interest, is a function constitutionally committed to each house of the Legislature and it cannot be delegated to another branch of government. Because the Commission is part of the executive branch, any delegation to the Commission by the Legislature of the power to discipline its members with respect to such core legislative functions is an unconstitutional delegation of power in violation of the separation of powers provision of the Nevada Constitution. In light of the fundamental importance of the structural protections provided by the separation of powers doctrine, the Legislature cannot waive those protections by enacting a statute. Thus, we affirm the district court's order.[11]

---

[11]Based on our holding, we need not reach the district court's finding that legislative immunity barred the Commission from conducting administrative proceedings against Senator Hardy.