Argued and submitted March 7, certified question answered May 26,
reconsideration denied July 19, 2005

Dixie McFADDEN;
Gregory W. Byrne; and Debra D. Byrne,
*Plaintiffs,*

*v.*

DRYVIT SYSTEMS, INC.,
a Rhode Island corporation,
*Defendant.*

(USDC CV-04-103-HA; SC S51901)

112 P3d 1191

Gregory W. Byrne, Portland, argued the cause and filed the brief for plaintiffs.

Kenneth Hobbs, of Stafford Frey Cooper, Seattle, Washington, argued the cause and filed the brief for defendant.

Peter R. Chamberlain, of Bodyfelt Mount Stroup & Chamberlain LLP, Portland, filed a brief for *amicus curiae* DaimlerChrysler Corporation.

GILLETTE, J.

## GILLETTE, J.

This case presents a question of law certified to this court by the United States District Court for the District of Oregon. *See generally* ORS 28.200 to 28.255; *Western Helicopter Services v. Rogerson Aircraft,* 311 Or 361, 364-71, 811 P2d 627 (1991) (setting out and explaining certification process). The certified question asks whether a 2003 amendment to ORS 30.905, which revives certain product liability causes of action for which a court had entered a final judgment of dismissal before the effective date of the amendment, violates the separation of powers provisions of the Oregon Constitution. For the reasons that follow, we conclude that the answer to that question is no.

We take the following facts from the District Court's certification order:

"Plaintiffs own adjacent townhouse residences in Portland, Oregon. Plaintiffs seek to recover damages allegedly resulting from water intrusion to their residences, which they allege stems from improper installation of an exterior stucco siding system (EIFS) and defective components.

"In 2001, plaintiffs filed a lawsuit against the siding installer and against defendant Dryvit Systems, Inc. ('Dryvit'), the manufacturer of the siding. After plaintiffs settled with the siding installer, the lawsuit was removed from state court to federal court, and then transferred to the Judicial Panel on Multidistrict Litigation ('MDL Panel'). In December 2003, the MDL Panel dismissed all of plaintiffs' claims against Dryvit as time-barred under ORS 30.905, the two-year statute of limitations applicable to a product liability action.

"The Oregon legislature amended ORS 30.905, effective January 1, 2004, to allow a products liability civil action to be commenced within two years after the date on which the plaintiff discovers or reasonably could have discovered the injury or property damage and the causal connection between the injury or damage and the product. The amendment also contains a provision that revives any cause of action that was filed under the former Oregon product liability law and dismissed as untimely under the former version of ORS 30.905, so long as a final judgment was entered

prior to January 1, 2004. Plaintiffs' claims are covered by this revival provision.

"As a result, plaintiffs filed this action on January 22, 2004. Plaintiffs assert the same five causes of action against Dryvit that they alleged in their prior lawsuit: deceit, strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness, and a claim under the Magnuson-Moss Warranty Act. However, Dryvit claims that the Oregon legislature's attempt to revive a dismissed cause of action violates the doctrine of separation of powers under the Oregon Constitution."

■     The District Court concluded that Oregon case law does not provide a definitive answer to the constitutional question presented and, therefore, certified the following question of law to this court:

"Whether § 2 of the 2003 amendments to ORS 30.905 (Sec. 2, Chap. 768, Or Laws 2003), which revives certain product liability causes of action for which a final judgment of dismissal has been entered prior to the effective date of the amendments, violates the separation of powers clause in Article VII, § 1, of the Oregon Constitution."

We accepted the certified question.

Article VII (Amended), section 1, of the Oregon Constitution provides:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *"

Although that clause does not, by its terms, strictly address the separation of governmental powers, this court has acknowledged that a separation of powers concept inheres in those words. As this court stated in *Circuit Court v. AFSCME*, 295 Or 542, 547, 669 P2d 314 (1983), "[w]hen this provision is invoked it becomes our task to examine whether some other department of government, by legislation or otherwise, prevents or obstructs the courts' exercise of its judicial power."

In addition to the provision just quoted, however, the Oregon Constitution contains another separation of powers clause, in Article III, section 1, which addresses a somewhat

different concern, *viz.*, whether one department of government, by its actions, exercises a function that the constitution commits to another department of government. Article III, section 1, provides:

> "The powers of the Government shall be divided into three separate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

This court has described its inquiry under Article III, section 1, as whether, in taking an action, "a 'person' or member of one department is exercising a function of another department of government." *AFSCME*, 295 Or at 547.

■      Plaintiffs contend that this court's separation of powers jurisprudence is grounded at least as much on Article III, section 1, as on Article VII (Amended), section 1, and that the precise question presented here implicates the considerations in Article III more than those in Article VII (Amended), because it concerns whether the legislature, in enacting a law that revives certain actions that courts already had dismissed as untimely, has usurped a judicial function in some way. For those reasons, plaintiffs urge this court to exercise its discretionary authority to reframe the question so as to consider the constitutionality of ORS 30.905 under both Articles III and VII (Amended).

We agree that the question of the constitutionality of the claim revival provisions of ORS 30.905 includes whether the legislature has improperly exercised a judicial function and, therefore, is one properly answered by reference to Article III. Indeed, as will be seen below, the cases on which the parties principally rely to support their respective positions here are based on Article III, rather than on Article VII (Amended).[1] For that reason, we exercise our discretion to modify the question certified to us to address whether the 2003 amendment to ORS 30.905 violates the separation of powers provisions of Article VII (Amended), section 1, *or* of

---

[1] In fact, Dryvit, for its part, does not make any argument to this court concerning the constitutionality of ORS 30.905 that is based on Article VII (Amended).

Article III, section 1, of the Oregon Constitution. *See Western Helicopter*, 311 Or at 370-71 (describing circumstances under which this court reserves the right, in the exercise of its discretion, to reframe questions); *A.K.H. v. R.C.T.*, 312 Or 497, 501, 822 P2d 135 (1991) (reframing certified question because court assumed that certifying court would wish to have answer on issue and reframed question was easily resolved without further briefing from parties).

We turn now to answer the certified question, as reframed.

In 2001, when plaintiffs first filed an action against Dryvit, ORS 30.905 provided, in part:

"(1)   * * * [A] product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption.

"(2)   Except [in circumstances not relevant to this case], a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

In *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 26 P3d 817 (2001), this court held that, under the foregoing statutory provision, the two-year limitations period for a product liability action begins to run when the "death, injury or damage complained of" occurs, whether or not the plaintiff discovers the harm within the ensuing two-year period. *Id.* at 234. That is, the court held that ORS 30.905 (2001) did not include a "discovery rule" that extended the statute of limitations in those cases in which the plaintiff could not have discovered the harm within two years of purchasing the product. *Id.* The record in this case discloses that plaintiffs purchased the allegedly defective siding product in 1997. Apparently, the harm began to occur immediately, but plaintiffs did not learn of that harm until 2000 and did not file their action against Dryvit until 2001. Accordingly, in 2003, the federal district court dismissed plaintiffs' action against Dryvit as untimely under ORS 30.905 (2001).

In early 2004, however, plaintiffs refiled their claims against Dryvit under authority granted by a 2003 amendment to ORS 30.905, which added a discovery rule to the statute of limitations for product liability actions and which revived certain actions that previously had been dismissed under the earlier version of the statute. Oregon Laws 2003, chapter 768, section 1, amended ORS 30.905 to provide, in part, as follows:

"(2) Except [in circumstances not relevant here], a product liability civil action for personal injury or property damage must be commenced not later than the earlier of:

"(a) Two years after the date on which the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant; or

"(b) Ten years after the date on which the product was first purchased for use or consumption."

Further, section 2 of that enactment provides that, effective January 1, 2004,

"(1) Subject to the provisions of this section, the amendments to ORS 30.905 by section 1 of this 2003 Act apply only to deaths, personal injuries or property damage that occurs [*sic*] on or after the effective date of this 2003 Act * * *.

"(2) The amendments to ORS 30.905 by section 1 of this 2003 Act revive a cause of action for which a civil action for death, personal injury or property damage was filed before the effective date of this 2003 Act if:

"(a) The civil action was filed within the time provided by ORS 30.905 as amended by section 1 of this 2003 Act;

"(b) The civil action was adjudicated based on the provisions of ORS 30.905 as in effect immediately before the effective date of this 2003 Act; and

"(c) A final judgment was entered in the civil action on or after June 8, 2001, and before the effective date of this 2003 Act.

"(3)  A civil action based on a cause of action revived by subsection (2) of this section must be refiled within one year after the effective date of this 2003 Act."

Or Laws 2003, ch 768, § 2.

■■■  The Article VII (Amended), section 1, question before us is whether the foregoing statutory provision amounts to a legislative action that "interferes with the judiciary in a manner which prevents or obstructs the performance of its irreducible constitutional task, adjudication." *AFSCME*, 295 Or at 550. As this court further stated in *AFSCME*, "[o]nly an outright hindrance of a court's ability to adjudicate a case * * * or the substantial destruction of the exercise of a power essential to the adjudicatory function" will amount to a violation of Article VII (Amended), section 1. *Id.* at 551; *accord DeMendoza v. Huffman*, 334 Or 425, 454, 51 P3d 1232 (2002) (by setting out distributive scheme for punitive damage awards in ORS 18.540, legislature established reasonable guidelines for courts to follow in exercise of their duties and did not interfere impermissibly with adjudication of plaintiff's claims).

The 2003 amendment to ORS 30.905 neither burdens a court's ability to adjudicate a case nor substantially destroys its ability to exercise a power essential to its adjudicatory function. Revival of claims that a court earlier had dismissed as untimely is no more burdensome to a court's ability to adjudicate a case than any other legislative enactment setting out statutes of limitations or other prerequisites for filing claims. Moreover, it cannot reasonably be said that the amendment to ORS 30.905 destroys a court's ability to exercise any power essential to its adjudicatory function, because a court's ability to decide the merits of the issues before it is unaffected by the amendments.

Based on the foregoing, we conclude that the 2003 amendment to ORS 30.905, reviving certain product liability claims that earlier had been dismissed as untimely, does not violate Article VII (Amended), section 1, of the Oregon Constitution.

■■■  As discussed above, the separation of powers clause of Article III is directed at a somewhat different concern than

that of Article VII (Amended), *viz.*, whether a person or member of one department of government has exercised a function that the constitution commits to another department of government. Dryvit asserts that the legislature has the authority to change statutes of limitations prospectively, and even to change statutes of limitations retroactively as to matters that have not yet been adjudicated, but argues that the legislature cannot, without running afoul of Article III, section 1, interfere in actions that the judiciary already has decided. Because, in Dryvit's view, the 2003 amendment to ORS 30.905 does purport to affect rights of litigants that the judicial branch already has resolved, it is unconstitutional.

Plaintiffs, for their part, agree that the legislature cannot constitutionally enact laws that purport to overturn judicial decisions or otherwise interfere with the vested rights of litigants, but, they argue, that is not what the amendment to ORS 30.905 does. Rather, according to plaintiffs, the amendment simply provides injured parties with a second opportunity to file and litigate their claims, which, until now, had not been decided on their merits.

This court considered a similar question in *State ex rel Huntington v. Sulmonetti*, 276 Or 967, 557 P2d 641 (1976). In that case, a worker was injured in April 1969 and filed a claim for workers' compensation in July 1970. The Worker's Compensation Board denied the claim as untimely under the then-applicable statute of limitations, which required claims like those of the worker to be filed within one year of the date of the accident causing the injury. In so doing, the board did not adjudicate any issue in the matter other than the claim's timeliness. The Court of Appeals affirmed the denial of the claim in 1973. *See Dahlstrom v. Huntington Rubber Mills*, 12 Or App 55, 505 P2d 352 (1973) (so holding). In 1975, the legislature amended the applicable statute of limitations in a manner that made the worker's claim timely and made the amendment retroactive to all claims for compensable injuries that occurred before its effective date. The worker filed the identical claim a second time. The employer argued, as Dryvit does here, that the issue of the timeliness of the claim was completely litigated after its first filing and that that adjudication was binding on the worker.

The court identified the issue presented in the case as one of *res judicata*, insofar as the case involved whether the claimant could bring a second identical claim against the employer after receiving an adverse ruling. *Sulmonetti*, 276 Or at 970. And, the court concluded, legislative action abrogating the rule of *res judicata* in certain cases does not offend the constitution in any way that the employer had contended. *Id.* at 971-72. First, the court rejected the employer's argument that it had a vested right in the result of the first adjudication and, therefore, that the revival of the worker's claims violated the employer's due process rights. The court observed that, because *res judicata* is a court-created rule, the court can determine the circumstances of its application; accordingly, a party cannot have a vested right in an expected application of the rule. *Id.*

Second, the court rejected the employer's argument that revival of workers' claims amounts to the legislature's attempt to interfere with the court's application of the rule of *res judicata* and, therefore, violates the separation of powers provision of Article III, section 1, of the Oregon Constitution. Of particular pertinence here, the court stated:

"If the legislature wants to provide for the refiling or retrial of claims previously created and litigated in accordance with legislative direction because it feels that the claimants did not have a fair opportunity to do so under prior law, it is the legislature's business and not an interference with any judicial function. It can be contended that the legislature cannot retroactively interfere with the prior results of litigation based upon common law or court established causes of action. We do not have to decide this question, however, because workmen's compensation claims are part of an exclusively legislative plan.[2] The legislature is not setting aside the court's original determination, which is final as to the law then existing. It is merely deciding that prior claimants should have another opportunity to file and litigate their claims under a new and different set of standards. If the legislature would originally have had authority to enact the statutes relating to the filing of claims as such statutes were subsequently amended (and it is plain it would have

_____

[2] Although we do not necessarily share the reservations that the *Sulmonetti* court expressed, we note that plaintiffs' product liability claims in the instant case are governed by a "legislative plan."

had), it had the authority to make the amendment retroactive and to permit claimant to refile despite the intervening litigation."

276 Or at 972.

As in *Sulmonetti*, the 2003 amendment to ORS 30.905 reviving certain claims does not effectively set aside the courts' initial determinations as to those claims. Those rulings remain final as to the law then existing. Rather, the amendment merely constitutes a legislative determination that the earlier version of the statute did not provide certain litigants with a fair opportunity to discover and pursue their claims. As was the case in *Sulmonetti*, it is undisputable that the legislature would have had the authority to include a "discovery rule" in the product liability statute of limitations in the first instance. Accordingly, the legislature had the authority to do so by amendment to the earlier statute, to make the amendment retroactive, and to permit plaintiffs to refile their claims notwithstanding an earlier judicial determination that their claims were untimely.

Dryvit argues that the court came to the opposite conclusion in *Macartney v. Shipherd*, 60 Or 133, 117 P 814 (1911), and, essentially, that the court's decision in *Sulmonetti* was wrong. Dryvit's reliance on *Macartney* is misplaced. In *Macartney*, the trial court entered a judgment against the defendant in a contract dispute. The defendant filed a motion for a new trial based on certain errors that he alleged that the trial court had committed during the trial. The court kept that motion under advisement for more than six months before ruling against the defendant. Within six months after the defendant received notice that the court had denied his motion, the defendant filed a notice of appeal. The statute governing the timing of appeals in effect at that time mandated that notices of appeal be filed within six months of the trial court's *judgment*. In addition, controlling case law at that time provided that orders granting or refusing a new trial were not appealable. The plaintiff, therefore, moved to dismiss the appeal as untimely.

After the defendant filed the notice of appeal, but before this court had issued its decision, the legislature amended the statute governing the time for filing appeals.

The amendment purported to "validate" any "pending and undetermined" appeals that had been filed in the Supreme Court within six months of an order denying a motion for a new trial, and required that they "shall be deemed to have been taken within the time required by law." 60 Or at 140-41, *quoting* Or Laws 1911, ch 143, § 1.

This court held that the amendment to the statute governing appeals could not be applied to pending cases without running afoul of the constitution. The court first observed that the dispute arose out of a contract between the plaintiff and the defendant, and that the laws relating to the enforcement of a contract are deemed to be part of the agreement so that, "when a judgment is rendered upon such contract, the rights of the parties after the time for appeal has elapsed become fixed and vested, and the legislature cannot, by any subsequent act, change those rights under such judgment." *Macartney*, 60 Or at 141. Accordingly, the court held, the plaintiff had a vested right in the fruits of the judgment on the contract that the circuit court had rendered at the time that the period for appeals from that judgment elapsed, and the legislature's attempt to interfere with that vested right was invalid. *Id.* at 142.

In addition, the court in *Macartney* considered the matter under Article III, section 1, of the Oregon Constitution. The court first observed that, "[t]o declare what the law is or has been is judicial power; to declare what the law shall be is legislative." 60 Or at 142, (quoting *Griffin's Ex'r v. Cunningham*, 20 Gratt 31, 61 Va 31 (1870) (which, in turn, quoted Cooly, *Constitutional Limitations*, 92)). In addition, the court quoted with approval the following from its earlier decision in *Thomas v. Portland*, 40 Or 50, 52, 66 P 439 (1901):

> "A statute which operates to annul or set aside the final judgment of a court of competent jurisdiction, and to disturb or defeat rights thus vested, is inoperative and void. By reason of the distribution of powers under the constitution, assigning to the legislature and the judiciary each its separate and distinct functions, one department is not permitted to trench upon the functions and powers of the other."

*Macartney*, 60 Or at 143. The court observed that the act in question did not profess to give litigants any new rights of

appeal; rather, it purported to "construe [previous legislative enactments] and to declare their meaning validating appeals, notices of which had been theretofore served." *Macartney*, 60 Or at 143. According to the court, that effort to validate pending appeals that had been filed late was "plainly an invasion of the judicial power by the legislative assembly, and is not admissible." *Id.*

As is evident from the foregoing, the court's holding in *Macartney* is not inconsistent with this court's later decision in *Sulmonetti*. As discussed above, the legislation at issue in *Sulmonetti* left intact existing rulings by the courts. It merely gave litigants a second opportunity to litigate their claims under new standards. As such, that legislation was an effort to "declare what the law shall be." *Macartney*, 60 Or at 142. By contrast, the legislation at issue in *Macartney* purported to construe existing legislation in a way that "validated" appeals then pending. As such, it was an effort to "declare what the law has been." *Id.*

It follows that *Macartney* is inapposite here. As discussed above, in enacting the 2003 amendment to ORS 30.905, the legislature did not retroactively "declare what the law has been." That is, the legislature was not declaring what the previous statute of limitations meant; that was done by the court in dismissing plaintiff's first case under the earlier statute of limitations. Neither did the amendment "operate to annul or set aside a final judgment of a court" on the merits. Rather, it gave litigants with product liability claims a new right to file an action. In so doing, the legislature performed the legislative function of "declar[ing] what the law shall be" with respect to newly filed claims. That choice was within the legislature's power to make.[3]

Based on the foregoing, we hold that, in enacting the 2003 amendment to ORS 30.905 and thereby reviving certain product liability causes of action for which a court had entered a final judgment of dismissal before the effective date

---

[3] Our purpose in discussing *Macartney* at length is to demonstrate that the case, by its own terms, does not control the outcome here. And, because it does not, we do not address the question whether we still would adhere completely to its analysis.

of the amendment, the legislature did not violate the separation of powers provision of Article III, section 1, of the Oregon Constitution. As discussed above, we also hold that the legislature did not violate Article VII (Amended), section 1, of the Oregon Constitution in enacting that amendment.

Certified question answered.