MARILYN BERKSON, AN INDIVIDUAL; AND GERTRUDE MALACKY, AN INDIVIDUAL, APPELLANTS, *v.* ROBERT C. LePOME, INDIVIDUALLY AND AS HUSBAND OF BARBARA LePOME; BARBARA LePOME, INDIVIDUALLY AND AS WIFE OF ROBERT C. LePOME; JOHN GORMAN, ESQ.; HOWARD BLOOM; AND RICHARD DONALDSON, ESQ., RESPONDENTS.

No. 49261

December 16, 2010 · 245 P.3d 560

*Cary Colt Payne*, Las Vegas; *Bruce L. Gale*, Las Vegas, for Appellants.

*Marquis & Aurbach* and *Terry A. Coffing, Micah S. Echols*, and *Lisa A. McClane*, Las Vegas, for Respondents.

# OPINION

By the Court, HARDESTY, J.:

For the first time, we consider NRS 11.340, a statute enacted by the Legislature in 1911[2] that provides a plaintiff whose judgment is subsequently reversed on appeal with the right to file a new action within one year after the reversal. We conclude that this

---

[2]This statute was initially enacted as section 38 of the Civil Practice Act of 1911. Section 38's annotation notes that the provision was drawn from California's Code of Civil Procedure, section 355. Language virtually identical to section 38, however, dates back to Nevada's territorial laws. *See* 1861 Laws of the Territory of Nevada, ch. 12, § 25; *see also* 1 Nev. Compiled Laws § 1040 (1873). The question of whether section 38 of the Civil Practice Act of 1911 was intended to draw from the California code or preexisting Nevada authority does not affect our analysis of NRS 11.340.

statute violates the separation of powers doctrine because it unconstitutionally interferes with the judiciary's authority to manage the judicial process and this court's ability to finally resolve matters on appeal by precluding subsequent and repetitive efforts to relitigate the same claims. As we strike NRS 11.340, we necessarily examine the district court's dismissal of the underlying action on preclusion grounds. We affirm the district court's order because appellants relied solely on NRS 11.340 and failed to provide any arguments to explain why claim and issue preclusion should not apply. Finally, we conclude that the district court abused its discretion in awarding attorney fees and costs to respondents to sanction appellants for filing a frivolous complaint, and therefore, we reverse the post-judgment attorney fees and costs award to respondents.

## BACKGROUND AND PROCEDURAL HISTORY

In 2001, respondent Howard Bloom filed a petition in the district court seeking the appointment of special administrators for the estate of Rose Miller. The petition was subsequently opposed by two of Miller's nieces, appellants Marilyn Berkson and Gertrude Malacky, on the grounds of undue influence and a lack of testamentary capacity. Bloom also filed a separate petition for the appointment of a trustee regarding the Rose Miller Living Trust, which was also opposed by appellants on the same grounds. Berkson and Malacky subsequently filed a civil complaint in district court against respondent Barbara LePome. These three actions were ultimately consolidated by the district court, which later dismissed Berkson and Malacky's civil complaint, concluding that the causes of action raised were either not recognized in Nevada or were duplicative of the claims raised in the estate and trust actions. In 2004, the district court dismissed the lack-of-testamentary-capacity claims pending in the estate and trust actions and concluded that the sole issue remaining for trial was the undue influence issue. At the trial, the jury found in favor of Berkson and Malacky, but this court reversed that judgment on appeal, in a July 12, 2006, unpublished order, concluding that the jury's verdict was not supported by substantial evidence.

Thereafter, in November 2006, Berkson and Malacky filed a new complaint in district court asserting claims for undue influence, breach of contract, fraud, elder abuse and neglect, intentional misstatement of facts, negligence, conspiracy and per se violation of Nevada law, and misconduct. Their complaint also sought attorney fees and costs. This complaint continued the litigation against Barbara LePome and Bloom and added respondents Robert LePome, John Gorman, and Richard Donaldson as additional defendants. Respondents moved the district court to dismiss

the complaint based on, among other things, their assertion that the complaint was barred by claim and issue preclusion. The district court subsequently entered an order summarily granting the motion to dismiss the complaint "in its entirety" over Berkson and Malacky's opposition. Berkson and Malacky have now appealed the district court's dismissal order. After the notice of appeal was filed, the district court awarded respondents attorney fees and costs to sanction Berkson and Malacky for filing a frivolous complaint. Berkson and Malacky have also appealed from this post-judgment award.

## DISCUSSION

We begin our discussion of the issues presented in this appeal by addressing Berkson and Malacky's challenge to the district court's application of the doctrines of claim and issue preclusion to their complaint. After concluding that the district court properly dismissed the underlying complaint on this basis, we then turn to Berkson and Malacky's appellate arguments related to the post-judgment award of attorney fees and costs to respondents, which, for the reasons set forth below, we conclude must be reversed.[3]

### Dismissal of Berkson and Malacky's complaint

On appeal, Berkson and Malacky argue that the district court erred in dismissing their complaint because NRS 11.340 clearly and unambiguously granted them the right to file a new complaint after this court reversed the jury verdict in their favor. NRS 11.340 provides that

> [i]f an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal, the plaintiff, or if the plaintiff dies and the cause of action survives, the plaintiff's heirs or representatives, may commence a new action within 1 year after the reversal.

According to Berkson and Malacky, because NRS 11.340 authorizes the filing of a new complaint after the reversal on appeal of a judgment in their favor, that statute necessarily precludes the application of claim and issue preclusion to their new complaint, and thus, the district court's dismissal of their complaint on such grounds was improper. This court has not previously addressed

---

[3]As our resolution of Berkson and Malacky's NRS 11.340 arguments on separation-of-powers and claim- and issue-preclusion grounds controls the disposition of this appeal, we need not address the lengthy discussion in the parties' briefing regarding Berkson and Malacky's standing to bring their claims.

NRS 11.340, which has not been substantively amended or altered since its enactment.[4]

Words in a statute will be given their plain meaning unless such an approach would violate the spirit of the act. *V & S Railway v. White Pine County*, 125 Nev. 233, 239, 211 P.3d 879, 882 (2009). Further, a statute will be construed in order to give meaning to its entirety, and this court " ' 'will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.' " *Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (quoting *Coast Hotels v. State, Labor Comm'n*, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001)).

As Berkson and Malacky correctly point out, the plain language of NRS 11.340 explicitly authorized their filing of a new action after this court reversed the judgment in their favor on appeal. And if NRS 11.340 is to have any real effect, it necessarily follows that the doctrines of claim and issue preclusion could not be applied to bar a new action filed based on that statute. Claim and issue preclusion essentially bar recovery on or prevent relitigation of previously resolved issues. *See Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054-55, 194 P.3d 709, 713 (2008) (explaining that claim preclusion acts to bar claims brought in a subsequent action between the same parties that either were brought or could have been brought in a prior action, and issue preclusion applies, under certain circumstances, when issues addressed in an earlier suit arise again in a later suit). To that end, these principles would apply to bar an action brought under NRS 11.340 and would render the statute meaningless, as any new action filed under the statute would automatically be subject to summary dismissal on preclusion grounds, which is exactly what happened in the underlying case. Thus, under this court's established rules of statutory construction, NRS 11.340 must be read as not only authorizing the filing of a new action after the reversal of a judgment in plaintiffs' favor on appeal, but as barring the application of claim and issue preclusion to any new action filed under the statute.

This conclusion does not end our analysis, however. In responding to Berkson and Malacky's appellate contentions, respondents argue that NRS 11.340 violates the separation of powers doctrine and should be struck down as unconstitutional. Specifically,

---

[4]It also appears that this court has not ever addressed any prior versions of the NRS 11.340 statutory language.

they contend that the statute unduly hampers the judiciary's ability to manage litigation through the application of the doctrines of claim and issue preclusion, and as a result, runs afoul of separation of powers principles. Berkson and Malacky dispute that respondents' separation of powers arguments provide a basis for affirming the district court's decision. For the reasons set forth below, we agree with respondents' contention that NRS 11.340 violates the separation of powers doctrine.

### *NRS 11.340 violates separation of powers*

#### *Separation of powers*

The separation of powers doctrine is the most important foundation for preserving and protecting liberty by preventing the accumulation of power in any one branch of government. *Secretary of State v. Nevada State Legislature*, 120 Nev. 456, 466, 93 P.3d 746, 753 (2004). Nevada's separation of powers ·provision, contained in Article 3, Section 1(1) of the Nevada Constitution, provides that

> [t]he powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

The Constitution further embodies this concept of limited government by specifically delineating the powers granted to the three distinct and coequal branches of government, as set forth in Article 4 (legislative), Article 5 (executive), and Article 6 (judicial). *Commission on Ethics v. Hardy*, 125 Nev. 285, 292, 212 P.3d 1098, 1103 (2009). As coequal branches, each of the three governmental departments has "inherent power to administer its own affairs and perform its duties, so as not to become a subordinate branch of government." *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 439 (2007) (internal quotations omitted); *accord Blackjack Bonding v. Las Vegas Mun. Ct.*, 116 Nev. 1213, 1218, 14 P.3d 1275, 1279 (2000).

We have been especially prudent to keep the powers of the judiciary separate from those of either the legislative or the executive branches. *See, e.g.*, *Galloway v. Truesdell*, 83 Nev. 13, 19, 422 P.2d 237, 242 (1967). This separation is fundamentally necessary because " '[w]ere the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator: Were it joined to the

executive power the judge might behave with all the violence of an oppressor.' " *Id.* at 19, 422 P.2d at 242 (quoting the French Enlightenment thinker Charles de Secondat, baron de Montesquieu, whose views had a significant following within the Revolutionary generation); The Federalist No. 47 (James Madison) (stating that "[t]he oracle who is always consulted and cited on [separation of powers] is the celebrated Montesquieu").

Here, the conflict is between an act of the Legislature—NRS 11.340—and the inherent ability of the judiciary to manage litigation and finally resolve cases. Regarding such discord between the legislative and judicial branches of government, it is well settled that the judiciary retains the authority to " 'hear and determine justiciable controversies' " as a coequal power to the Legislature's broad authority to enact, amend, and repeal legislation. *Halverson*, 123 Nev. at 260, 163 P.3d at 439 (quoting *Galloway*, 83 Nev. at 20, 422 P.2d at 242). And as one commentator aptly explained this distinction, "[t]o declare what the law *is or has been* is judicial power; to declare what the law *shall be* is legislative." 1 Thomas M. Cooley, *Constitutional Limitations* 191 (8th ed. 1927).

In keeping with this theory, " '[t]he judiciary . . . has the inherent power to govern its own procedures.' " *State v. Dist. Ct. [Marshall]*, 116 Nev. 953, 959, 11 P.3d 1209, 1212 (2000) (quoting *Whitlock v. Salmon*, 104 Nev. 24, 26, 752 P.2d 210, 211 (1988)); *see also* NRS 2.120(2) (legislative recognition that this court regulates civil practice in order to promote "the speedy determination of litigation upon its merits"). The judiciary is entrusted with " 'rule-making and other incidental powers reasonable and necessary to carry out the duties required for the administration of justice' " and "to economically and fairly manage litigation." *Borger v. Dist. Ct.*, 120 Nev. 1021, 1029, 102 P.3d 600, 606 (2004) (quoting *Goldberg v. District Court*, 93 Nev. 614, 616, 572 P.2d 521, 522 (1977)); *see also Marshall*, 116 Nev. at 959, 11 P.3d at 1213 (stating that " '[t]here are regulating . . . powers of the Judicial Department that are within the province of the judicial function, i.e., . . . promulgating and prescribing any and all rules necessary or desirable to handle the business of the courts or their judicial functions' "(second and third alterations in original) (quoting *Galloway*, 83 Nev. at 23, 422 P.2d at 244)). Thus, " 'the legislature may not enact a procedural statute that conflicts with a pre-existing procedural rule, without violating the doctrine of separation of powers, and . . . such a statute is of no effect.' " *Marshall*, 116 Nev. at 959, 11 P.3d at 1213 (quoting *State v. Connery*, 99 Nev. 342, 345, 661 P.2d 1298, 1300 (1983)); *see also Secretary of State*, 120 Nev. at 465, 93 P.3d at 752 (ex-

plaining that the Legislature cannot restrict, substantially impair, or defeat the exercise of this court's constitutional powers); *Whitlock*, 104 Nev. at 26, 752 P.2d at 211 (concluding that a particular statute did not encroach on judicial authority because it did not disrupt or abrogate a court rule); *but see Connery*, 99 Nev. at 345, 661 P.2d at 1300 (noting that any court-created procedural rules "may not conflict with the state constitution or abridge, enlarge or modify any substantive right" (internal quotations omitted)). In addition to the constitutionally mandated bases for keeping separate those inherent powers of the judiciary, leaving control of court rules and the administration of justice to the judiciary, and thereby placing the responsibility for the system's continued effectiveness with those most familiar with the latest issues and the experience and flexibility to more quickly bring into effect workable solutions and amendments, makes good sense. *Goldberg*, 93 Nev. at 617-18, 572 P.2d at 523.

### *Claim and issue preclusion*

This court's use of the concepts of claim and issue preclusion is well established. *See Whitman Mining Co. v. Baker*, 3 Nev. 386, 393 (1867) (discussing preclusive effects); *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 194 P.3d 709 (2008) (clarifying Nevada law on claim and issue preclusion). While claim and issue preclusion are legal doctrines rather than procedural rules per se, we conclude that these legal doctrines are nonetheless subject to the same constitutional separation of powers analysis as this court's procedural rules. Other courts discussing this issue are in apparent agreement with our conclusion that certain legislative encroachments on the judiciary's ability to apply claim and issue preclusion to cases decided on their merits raise separation of powers concerns. *See In re Islamic Republic of Iran Terrorism Lit.*, 659 F. Supp. 2d 31, 71-84 (D. D.C. 2009) (examining in extensive detail the issue of judicial power and finality of judgments under federal precedent and stating an inclination to conclude that because of the centrality of preclusion principles to the judiciary's purpose of rendering final judgments in civil cases, under certain circumstances, legislation negating these doctrines violates separation of powers); *McFadden v. Dryvit Systems, Inc.*, 112 P.3d 1191, 1195, 1198 (Or. 2005) (suggesting that a statute preventing application of preclusion principles to a final judgment on the merits would violate the Oregon state constitution on separation of powers grounds).

The important public policy behind the application of preclusion principles further supports our conclusion that a statute, such as

NRS 11.340, which prohibits the application of these doctrines, violates separation of powers. Claim preclusion is necessary because " ' 'fairness to the defendant[ ] and sound judicial administration[ ] require that at some point litigation over the particular controversy come to an end.' " *Five Star Capital*, 124 Nev. at 1058, 194 P.3d at 715 (quoting Restatement (Second) of Judgments § 19 cmt. a (1982)). As for issue preclusion, the important policy reasons for its application include "conserving judicial resources, . . . maintaining consistency, and . . . avoiding oppression or harassment of the adverse party." *In re Sandoval*, 126 Nev. 136, 141, 232 P.3d 422, 425 (2010) (internal quotations omitted). These significant public policies advanced by the application of preclusion principles are directly thwarted by NRS 11.340 because it acts to prolong previously resolved cases, resulting in unnecessary expenses for adverse parties and the diversion of time and scarce judicial resources away from undecided cases.

We therefore hold that NRS 11.340 unconstitutionally interferes with the judiciary's authority to manage the litigation process and this court's ability to provide finality through the resolution of a matter on appeal. Consequently, we strike NRS 11.340 as unconstitutional on separation of powers grounds.[5]

Because we strike the statute, Berkson and Malacky's refiled complaint is subject to preclusion principles. Berkson and Malacky, however, have provided no analysis or discussion in their briefs to explain how their claims would survive the application of preclusion principles with regard to any of the respondents, including those named as defendants for the first time below. It is well established that this court need not consider issues not supported by cogent argument and citation to relevant authority. *See*

---

[5]We note that in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 234 (1995), the United States Supreme Court, in addressing an issue regarding a federal statute of limitations, indicated that laws applicable at the time an action is filed, which permit the reopening of cases for certain reasons, do not run afoul of separation of powers principles under the United States Constitution. *Plaut*, however, dealt with a case dismissed on statute of limitations grounds and did not address a situation when, as here, a case resolved on the merits was resurrected by a statute that, by its plain language, eviscerates the doctrines of claim and issue preclusion for cases subject to that statute. In light of this key difference, and given our prior precedent regarding legislative encroachments into the inherent powers of the judiciary, *see, e.g.*, *Galloway*, 83 Nev. at 19, 422 P.2d at 242, and the fact that the Nevada Constitution embraces separation of powers to an even greater extent than the United States Constitution, *Hardy*, 125 Nev. at 292, 212 P.3d at 1103-04, *Plaut* does not alter our conclusion that, under the Nevada Constitution, NRS 11.340 is unconstitutional on separation of powers grounds.

*Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006). As a result, we necessarily affirm the district court's dismissal on preclusion grounds.[6]

Although concurring in the result, our dissenting colleague would leave NRS 11.340 at peace by offering an alternative interpretation to the statute that renders it only applying to circumstances in which a plaintiff's case has been reversed on appeal, unlike the situation here, on "technical" grounds. We disagree that such an approach should guide our analysis.

First, the interpretation of NRS 11.340 advocated by the dissent violates the plain reading of that statute by reading in language that is not there and fundamentally altering the text when neither appellants nor respondents ever argue that NRS 11.340 is ambiguous. Second, our esteemed colleague effectively argues for the approach taken by California courts that read the "on the merits" element into that state's version of NRS 11.340, section 355 of the California Code of Civil Procedure, even though, at the time of these California decisions, section 355 contained no such language. *See, e.g.*, *Bollinger v. National Fire Ins. Co. of Hartford, Conn.*, 154 P.2d 399, 404 (Cal. 1944); 3 *Kerr's Cyclopedic Codes of California*, Code of Civil Procedure, at 332 (1907) (quoting section 355 as providing that " '[i]f an action is commenced within the time period prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal, the plaintiff, or if he die and the cause of action survive, his representatives, may commence a new action within one year after the reversal' "). While it is true that the text for NRS 11.340 appears to be largely drawn from California's section 355 and that the California courts have interpreted their provision in a manner consistent with the approach advocated by the dissent, we conclude that such an approach is unduly problematic. For instance, the analysis in *Bollinger* simply declares the outcome and relies heavily on a New York statute that is significantly different from section 355. In its enactment, section 355 was reproduced from a section of the New York Code of Civil Procedure that similarly lacked an "on the merits" element. *See Bollinger*, 154 P.2d at 404 (noting that section 355 was copied after section 84 of the New York Code of Procedure); *Gaines v.*

---

[6]Generally, claim preclusion does not apply when the parties are not the same. *See Five Star Capital*, 124 Nev. at 1054-55, 194 P.3d at 713. Because Berkson and Malacky make no arguments to this effect regarding those defendants added for the first time in the underlying action, however, this issue has been waived, and thus, we do not consider it. *Edwards*, 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38.

Additionally, having reviewed Berkson and Malacky's remaining appellate arguments, we conclude that they lack merit.

*City of New York*, 109 N.E. 594, 595 (N.Y. 1915) (quoting section 84 as providing that "[i]f an action be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed, on appeal, the plaintiff, or if he die and the cause of action survive, his heirs or representatives, may commence a new action within one year after the reversal"). Subsequently, however, by the time the *Gaines* decision was published, New York had replaced section 84. *Bollinger*, 154 P.2d at 405 (noting that the *Gaines* decision addressed a successor to section 84). The replacement New York statute discussed in *Gaines* set forth that

> [i]f an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal, without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits; the plaintiff, or, if he dies, and the cause of action survives, his representative, may commence a new action for the same cause, after the expiration of the time so limited, and within one year after such a reversal or termination.

109 N.E. at 595. In relying on *Gaines*, in our view, the *Bollinger* court did not sufficiently account for the fact that the amended New York statute in *Gaines* expressly provided the specific "upon the merits" exception missing from the California statute. Further, we also note that the amended New York statute does not enumerate all possible "technicalities" that could lead to a reversal, and thus, the California reading allowing new causes of action only for reversals not "on the merits" arguably goes even further than the amended New York statute.

Finally, while the California Legislature has subsequently amended the section 355 language to adopt the "on the merits" element historically read in by the California courts, *see* 1992 Cal. Stat. 887; *see also* Cal. Civ. Proc. Code § 355 (West 2006) (noting that the amended section 355 provides "[i]f an action is commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal other than on the merits, a new action may be commenced within one year after the reversal"), our Legislature has, to date, not similarly adopted this amendment. We should not supply judicial meaning to a statute that is plain and unambiguous. Rather, this court should leave this decision to the Legislature if it wants to extend statute-of-limitations periods for judgments that have been reversed on appeal for "technical" reasons. Further, if this court were instead to proceed to recognize the "on the merits" element discussed in the dissent, we, and not the Legislature, would also hereafter be called

to supply, on a case-by-case basis, which "technical" reversals fit within the "on the merits" exception, and which do not.

Accordingly, for the above listed reasons, we are not persuaded by the dissent's suggestion that NRS 11.340 should be saved through interpretation rather than struck down on separation of powers grounds.

### Attorney fees and costs award

Finally, Berkson and Malacky challenge the district court's post-judgment order awarding attorney fees and costs to respondents as a sanction, arguing, among other things, that NRS 11.340 clearly authorized the filing of their dismissed complaint and that it therefore cannot be considered frivolous. Respondents, however, argue that the lawsuit was frivolous and that the district court did not abuse its discretion in awarding sanctions.

This court reviews a district court's award of attorney fees and costs, as a sanction, for an abuse of discretion. *See Nevada Power v. Fluor Illinois*, 108 Nev. 638, 646-47, 837 P.2d 1354, 1360 (1992). Here, the district court summarily awarded attorney fees and costs without citation to authority. As noted, NRS 11.340's plain language permitted Berkson and Malacky to refile their claims. Moreover, before this opinion, there was no precedent addressing NRS 11.340, and thus, no reason to anticipate that the statute would be found to be unconstitutional. Accordingly, because appellants' position was supported by NRS 11.340, we conclude that it was an abuse of discretion for the district court to sanction appellants for filing a frivolous claim. *Nevada Power*, 108 Nev. at 646-47, 837 P.2d at 1360. As a result, we reverse the attorney fees and costs awarded to respondents.[7]

PARRAGUIRRE, C.J., and CHERRY and SAITTA, JJ., concur.

PICKERING, J., concurring in part and dissenting in part:

I would uphold the district court's dismissal of Berkson's and Malacky's second suit based on claim preclusion and leave NRS 11.340 in peace. Though it does not save Berkson and Malacky, NRS 11.340 had useful service left as a statute-of-limitations "savings" or tolling provision and does not deserve to be invalidated on separation of powers grounds. Ironically, the separation of powers offense is ours, in judicially repealing a 150-year-old statute that conventional rules of statutory construction say should survive judicial review.

---

[7]We deny respondents' request for attorney fees and costs on appeal.

## 1. *Res judicata or claim preclusion*

This is the third time these parties have come before this court. Nobody (except maybe Berkson and Malacky) seriously contends that the first appeal did not produce a final, conclusive judgment in favor of LePome and against Berkson and Malacky. This court so held in the parties' second appeal, *In re Estate of Miller*, 125 Nev. 550, 216 P.3d 239 (2009), where we noted that, on the first appeal, the court "reversed" the original judgment, "ruled that because substantial evidence did not support the verdict, LePome deserved judgment as a matter of law," *id.* at 552, 216 P.3d at 241, and held: "When this court reverses a judgment on a jury verdict for insufficient evidence and declares the appellant entitled to judgment as a matter of law, *the reversal and remittitur comprise the judgment by which the parties* and the district court *are thereafter bound." Id.* at 553, 216 P.3d at 242 (emphasis added). Because "[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim," Restatement (Second) of Judgments § 19 (1982), except "[w]hen the judgment is one of dismissal for lack of jurisdiction, for improper venue, for nonjoinder or misjoinder of parties," or for other non-claims-preclusive reasons, *id.* § 20, *cited with approval in Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054 n.27, 194 P.3d 709, 713 n.27 (2008), I conclude, as my colleagues do, that (1) the reversal in the first appeal resulted in a final judgment, and (2) the prior appellate judgment commands res judicata or claim-preclusive effect.

## 2. *NRS 11.340*

Where we part company is on NRS 11.340. The majority accepts Berkson's and Malacky's literal, plain meaning interpretation that NRS 11.340 means to wipe the litigation slate clean, that is: It gives the party who loses on appeal an absolute one-year right to a do-over in a second suit—even though the appeals court just rejected his or her claims as meritless. I do not see that NRS 11.340 has such subversive designs on the conclusiveness of final appellate judgments. In my view, all NRS 11.340 does is grant a one-year extension of an otherwise-expired statute of limitations when a case that was tried to successful judgment is reversed on appeal. If, as here, the appellate reversal finally concludes the case so that claim or issue preclusion applies, those doctrines will defeat *the second suit on the same or related claims*, wholly apart from any statute-of-limitations defense. But what about an appellate reversal that does not reach the merits and reverses for reasons that make remand back to the same trial court for disposition on the merits improper—for example, a suit tried to judgment in federal court that is reversed on appeal for want of federal subject

matter jurisdiction?[1] In that situation, NRS 11.340 provides relief. It gives a plaintiff who won at trial but lost on appeal on a technical, non-merits-preclusive point a one-year grace period to refile the suit, when otherwise, without NRS 11.340, the statute of limitations would have run. The second suit is subject to whatever other defenses might apply, but the statute of limitations, per NRS 11.340, isn't one of them.

Text, context, and history support the more limited and constitutionally benign reading I offer. NRS 11.340 dates back to 1861, when Nevada, then a territory, convened the First Regular Session of its Legislative Assembly. Using language left virtually untouched to this day, the provision became law on November 21, 1861, enacted as section 25 of Chapter XII, "An Act defining the Time of Commencing Civil Actions," of Nevada's first civil practice act. 1861 Laws of the Territory of Nevada, ch. 12, § 25, at 30.[2] Just a single sentence, NRS 11.340 has always begun with a reference to limitations periods—"If an action shall be commenced within the time prescribed therefor . . . ."—continuing with, "and a judgment therein for the plaintiff be reversed on appeal"—and ended with a reference to limitations periods: "the plaintiff . . . may commence a new action within 1 year after the reversal." *Id.*; 1912 Revised Laws of Nevada, Vol. 2, § 4980; 1929 Nev. Compiled Laws § 8537; NRS 11.340. And it has always kept company with other sections of its kind, in the chapters comprising statutes of limitation and their tolling exceptions. 1912 Revised Laws of Nevada, Vol. 2, §§ 4974-4985 (denominated as Chapter 5 of the Civil Practice Act); 1929 Nev. Compiled Laws §§ 8532-8542 (denominated as Chapter 5 of the Civil Practice Act); NRS Chapter 11. From this it follows that NRS 11.340 *only* concerns statutes of limitations, not other broader defenses like claim and issue preclusion. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:5, at 189-201 (7th ed. 2007) ("A statute is passed as a whole and not in parts or sections . . . . each part or section should be construed in connection with every other part or section [and] it is not proper to confine interpretation to the one section to be construed." (footnote omitted));

---

[1] The example in the text is based on *Liberace v. Conway*, 574 N.E.2d 1010, 1012 (Mass. App. Ct. 1991), which used a statute like NRS 11.340 to save pendent state law claims in a federal case dismissed for want of subject matter jurisdiction after the statute of limitations had run.

[2] The scant changes between NRS 11.340's original and current form are shown by strike-outs (to show deletions) and bracketed italics (to show additions): "If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal, the plaintiff, or if he [*the plaintiff*] die[*s*] and the cause of action survive[*s, the plaintiff's*] his heirs or representatives, may commence a new action within one [*1*] year after the reversal."

*see* 2B *id.* § 51:3 (7th ed. 2008) (statutes passed together should be construed "in pari materia").

Nevada was not alone in making a prior-proceedings savings provision part of its statute-of-limitations scheme. California had an identical tolling statute, 3 Codes of California § 355 (Bender-Moss Company 1909), enacted March 11, 1872, *reprinted in Bollinger v. National Fire Ins. Co. of Hartford, Conn.*, 154 P.2d 399, 404 (Cal. 1944), while New York had something similar, *Gaines v. City of New York*, 109 N.E. 594, 595 (N.Y. 1915) (tracing the New York statute back to 1788), as did Massachusetts, *Liberace*, 574 N.E.2d at 1012 (tracing the Massachusetts statute back to 1835), Florida, *City of Orlando v. Murphy*, 94 F.2d 426, 429 n.2 (5th Cir. 1938) (reprinting and applying Florida's version of NRS 11.340), and other states, *see* 51 Am. Jur. 2d *Limitation of Actions* §§ 287-88 (2000). Indeed, these statutes go all the way back to the English Limitation Act of 1623. *See Bollinger*, 154 P.2d at 404 ("section 355 of the [California] Code of Civil Procedure"—containing language identical to NRS 11.340—was "copied from section 84 of the New York Code of Procedure, which in turn was based on section 4 of the English Limitation Act of 1623"). Legal thinkers as profound as Cardozo and Traynor have found worth in these savings statutes:

> "whatever verbal differences exist, the purpose and scope of [savings statutes like NRS 11.340] are identical in substance with [their] prototype, the English act of 1623. . . . The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts."

*Bollinger*, 154 P.2d at 405 (Traynor, J.) (quoting *Gaines*, 109 N.E. at 596 (Cardozo, J.)).

If NRS 11.340 has the "plain meaning" the majority discerns, it is surprising that over the past 400 years, no other court has read its jurisdiction's cognate statute this way. The few courts to have considered Berkson's and Malacky's "plain meaning" reading have rejected it. Thus, in *City of Orlando v. Murphy*, 94 F.2d 426 (5th Cir. 1938), Murphy, who lost on a prior appeal, invoked a Florida statute like NRS 11.340 to argue he could start his case all over again, despite the appellate court judgment against him. The court made short work of Murphy's argument (and case). "[T]he statute under which [Murphy] claims the right to file does not enlarge or affect, indeed, it has nothing whatever to do with, the right of a person after reversal to retry his case, either in the same

action or by a new suit, when the law of the case, as settled by the reversing decision and opinion, leaves nothing to retry." *Id.* at 429. *Accord Liberace*, 574 N.E.2d at 1013 ("As to a case adjudicated on the merits [on a prior appeal], principles of res judicata apply and the renewal statute [comparable to NRS 11.340] has no pertinence."); *see* 51 Am. Jur. 2d *Limitation of Actions* § 288 (2000) (observing that "[t]he rule that a savings statute [like NRS 11.340] is inapplicable if the prior action was dismissed on the merits is essentially a corollary of the principle of res judicata that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred").[3]

### 3. *Separation of powers/constitutional conflict*

The majority rejects a *Murphy*-based reading of NRS 11.340 as adding words the statute doesn't contain, in violation of the "plain meaning" rule. (Plain meaning may be in the eyes of the beholder—the majority's reading applies NRS 11.340 to claim and issue preclusion when all the statute addresses are limitations periods.) Regardless, the "plain meaning" rule does not justify reading a statute in a way that leads to an absurd result, *State v. Friend*, 118 Nev. 115, 120-21, 40 P.3d 436, 439 (2002), or that invalidates a statute on separation of powers grounds when another, more limited reading would not. *Waite v. Burgess*, 69 Nev. 230, 232-33, 245 P.2d 994, 996 (1952).

In *Waite*, the court confronted a statute that, read literally, could have run afoul of the Nevada Constitution's separation of powers clause. The court declined to read the statute aggressively. "In the light of our constitutional division of the powers of government, it is our view that such an invasion of the sphere of the judicial department could not have been contemplated by the legislature." *Id.* at 233, 245 P.2d at 996 (citing Nev. Const. art. 3, § 1). *Waite's* circumspect approach seems especially appropriate here, where the statute challenged as unconstitutional was passed in 1861, three years before the Nevada Constitution was adopted, *Debates & Proceedings of the Nevada State Constitutional Convention of 1864*, at 779 (Andrew J. Marsh off. rep. 1866), and has been

---

[3]Some states have statutes that, either originally or by amendment, specify that the reversal must be other than on the merits for tolling to occur. *See Hull v. Central Pathol. Serv. Med. Clin.*, 34 Cal. Rptr. 2d 175, 178 (Ct. App. 1994) (reprinting amended version of Cal. Civ. Proc. Code § 355). This eliminates ambiguity by making express the otherwise implicit restriction that such statutes only apply to a statute-of-limitations defense, not res judicata or claim preclusion. *See Yonkers Contracting v. Port Authority*, 712 N.E.2d 678, 681 (N.Y. 1999) (New York's carve-out of "final judgment upon the merits" from its prior-proceedings tolling statute is "essentially a corollary of the principle of res judicata"). These amendments reinforce the argument that statutes like NRS 11.340 have no pretensions of subverting final appellate judgments.

reenacted many times since, *see supra* note 2. *See also Zamora v. Price*, 125 Nev. 388, 392, 213 P.3d 490, 492-93 (2009) ("statutes are presumed to be valid" and will be upheld unless "the constitution is clearly violated" (citing *Universal Electric v. Labor Comm'r*, 109 Nev. 127, 129, 847 P.2d 1372, 1373-74 (1993)); 2A *Sutherland Statutory Construction, supra*, § 45:11, at 81-83 ("statutory provisions should be construed to avoid unconstitutionality . . . . If [a] law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds [its] constitutionality." (footnote omitted)).

At most, NRS 11.340 can be read two ways. Its ambiguity lies in its unqualified use of the word "reversal." A reversal can amount to a final judgment on the merits, as with the parties' first appeal here; it can involve a reversal and remand for a new trial before the same trial court for remediable error; or a reversal can lead to dismissal on grounds unrelated to the merits, such as improper venue, lack of subject matter jurisdiction, or other defect. Because NRS 11.340 does not differentiate among possible reversals does not mean that it strips final appellate judgments of their claim- and issue-preclusive effect. Another, equally plausible reading is that NRS 11.340 only applies to statutes-of-limitation defenses raised in cases involving reversals for reasons courts recognize as grounds for avoiding claim and issue preclusion in a later-filed, second suit. This leaves the claim and issue preclusion issue where the majority's separation of powers analysis says it should remain: With the courts.[4]

This case does not test NRS 11.340's outer limits, as occurred in *Bollinger*. It can and should be disposed of based on Berkson and Malacky having sustained a judgment on the merits against them that they now cannot avoid. But I note that because a statute is old does not justify its judicial repeal. *See 2 Sutherland Statutory Construction, supra*, § 34:5, at 35-36 (7th ed. 2009) (the separation of powers doctrine places "[t]he responsibility to clear dead wood out of the statute books . . . with legislatures, even though legislative bodies are almost exclusively preoccupied with passing new laws").

Despite what to us moderns is its confusing brevity, I submit that NRS 11.340 still has a legitimate purpose, in varied, perhaps

---

[4]Supporting this reading of NRS 11.340 is its companion statute, NRS 11.500, which the Legislature enacted in 2003 to provide for an additional 90 days to refile a suit dismissed for want of subject matter jurisdiction, even at the district court level. 2003 Nev. Stat., ch. 376, § 1, at 2134-35. NRS 11.500 and NRS 11.340 overlap, with the latter only applying to appeals but providing a longer grace period of one year as opposed to 90 days. Thus, NRS 11.500 does not appear to have repealed NRS 11.340 by implication. *See also State v. Thompson*, 89 Nev. 320, 322-23, 511 P.2d 1043, 1045 (1973) (repeals by implication are disfavored).

untested and as yet unimagined ways. *Cf. Arceo v. Tolliver*, 19 So. 3d 67, 75 (Miss. 2009) (Mississippi's analogous savings statute, which dates back to 1848, could have saved the plaintiff's second malpractice suit after the first was dismissed for lack of the pre-suit notice required) (dictum). For this reason, I would not invalidate NRS 11.340 on separation of powers grounds but leave it intact for another litigant another day. While I thus concur in the decision to affirm the dismissal below, I respectfully dissent from the majority's interpretation and invalidation of NRS 11.340 on separation of powers grounds and its reversal of the district court's decision awarding attorney fees to LePome.