129 Nev., Advance Opinion 72

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NORTH LAKE TAHOE FIRE PROTECTION DISTRICT, Appellant, vs. WASHOE COUNTY BOARD OF COUNTY COMMISSIONERS; AND TAMMI DAVIS, WASHOE COUNTY TREASURER, Respondents. | No. 60395 **FILED** OCT 03 2013 |

Appeal from a district court order denying a petition for a writ of mandamus seeking payment under NRS Chapter 474. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed.*

Reese Kintz, LLC, and Devon T. Reese, D. Geno Menchetti, and Ryan W. Herrick, Incline Village,
for Appellant.

Richard A. Gammick, District Attorney, and David C. Creekman, Chief Deputy District Attorney, Washoe County,
for Respondents.

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, CHERRY, J.:

This case arises out of actions taken by respondents Washoe County Board of County Commissioners and Washoe County Treasurer

13-29469

Tammi Davis to provide refunds to Incline Village and Crystal Bay property owners who paid excessive property taxes as a result of improper appraisals. To cover the cost of the refunds plus interest, respondents withheld amounts from property tax distributions made to the various county taxing units that had previously benefited from the excessive property taxes, essentially offsetting the refunded amounts against the distributions. Those taxing units from which distribution amounts were withheld include appellant North Lake Tahoe Fire Protection District (FPD), which petitioned the district court for a writ of mandamus compelling respondents to cease withholding portions of the distributions.

The district court denied relief, and on appeal, we are asked to consider the propriety of these withholdings under our current statutory scheme. We must also consider whether judicial interference in this matter is precluded by the political question doctrine. To assist with this latter assessment, we take this opportunity to adopt the factors set forth in *Baker v. Carr*, 369 U.S. 186, 217 (1962). In applying these factors, we conclude that because respondents were within their authority to withhold distributions, and because the manner in which they did so was discretionary, the political question doctrine precludes judicial review. We thus conclude that the district court properly denied writ relief.

## FACTS AND PROCEDURAL HISTORY

FPD provides all emergency and nonemergency fire services, along with emergency medical services, to the Incline Village/Crystal Bay area. It was formed under NRS Chapter 474 (County Fire Protection Districts) and is funded pursuant to the requirements set forth in NRS 474.190. Like other taxing units, including Washoe County, the Washoe County School District, the State of Nevada, the Incline Village General

Improvement District, and the supplemental city/county relief tax account, FPD obtains funding from property tax distributions. Slightly more than half of FPD's budget is made up of its bimonthly distributions of the real property taxes.

Pursuant to our decision in *Berrum v. Otto*, 127 Nev. ___, ___, 255 P.3d 1269, 1274-75 (2011), in which we held that the Washoe County Treasurer had a duty under NRS 360.2935 to refund, with interest, unconstitutionally imposed and collected property taxes in Incline Village and Crystal Bay, the County Commissioners considered various ways in which the refund and interest payment could be funded. The County Commissioners ultimately decided to pay for the refund and interest by reducing future property tax distributions proportionately among the various taxing units. Thus, in August 2011, the County Commissioners directed Treasurer Davis to make the refunds and interest payments and to withhold corresponding proportionate amounts from the county taxing units' property tax distributions over the next 18 months. Doing so reduced FPD's property tax distribution significantly.

Consequently, FPD filed a petition for a writ of mandamus with the district court, seeking to prevent respondents from continuing to withhold any portion of FPD's tax revenues. After a hearing, the district court determined that writ relief was not appropriate. The district court determined that, to address FPD's concerns, it would have to interject itself into the internal political decisions of another branch of government, which it could not do. The court further pointed out that a writ may not be used to prescribe the manner in which political officers should exercise discretion unless the officers' actions are arbitrary and capricious, which

 

was not the case here. Thus, the district court denied the application for writ relief. FPD subsequently appealed.

On appeal, FPD argues that the writ of mandamus exists to allow a court to compel compliance with a statutory mandate such as that contained in NRS 474.200. NRS 34.160. FPD points out that NRS 474.200 is not discretionary—it requires respondents to collect and then distribute a portion of the real property taxes to FPD. FPD thus argues that the district court erred in refusing to issue a writ of mandamus to compel the County Commissioners and Treasurer to distribute the full amount due based on the current year's property tax base. FPD further contends that the district court's reliance on separation-of-powers-based justiciability requirements was misplaced, as issuing a writ would not intrude on respondents' decision-making authority. In so arguing, FPD challenges the withholding of monetary distributions to fund the tax refunds. Respondents, on the other hand, assert that the issue presented here is completely nonjusticiable and, thus, the district court properly denied FPD's requested writ relief.

## DISCUSSION

The political question doctrine stems from the separation of powers essential to the American system of government. Nevada's separation of powers doctrine, contained in Article 3, Section 1 of the Nevada Constitution, provides that "no persons charged with the exercise of powers properly belonging to [another branch] shall exercise any functions, appertaining to either of the others." This doctrine exists for one very important reason—"to prevent one branch of government from encroaching on the powers of another branch." *Comm'n on Ethics v. Hardy*, 125 Nev. 285, 292, 212 P.3d 1098, 1103 (2009). Recently, we

stated that "[t]his separation is fundamentally necessary because '[w]ere the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator: Were it joined to the executive power the judge might behave with all the violence of an oppressor.'" *Berkson v. LePome*, 126 Nev. ___, ___, 245 P.3d 560, 565 (2010) (second alteration in original) (quoting *Galloway v. Truesdell*, 83 Nev. 13, 19, 422 P.2d 237, 242 (1967)). "The division of powers is probably the most important single principle of government declaring and guaranteeing the liberties of the people." *Galloway*, 83 Nev. at 18, 422 P.2d at 241.

The Nevada Constitution specifically delineates the power belonging to each branch of government in this state. *Berkson*, 126 Nev. at ___, 245 P.3d at 564. The Legislature enacts laws, and in turn, the executive branch is tasked with "carrying out and enforcing th[ose] laws." *Galloway*, 83 Nev. at 20, 422 P.2d at 242 ("The executive power extends to the carrying out and enforcing the laws enacted by the Legislature."); 16 C.J.S. *Constitutional Law* § 354 (2005) ("The adoption of administrative regulations necessary to implement and carry out the purpose of legislative enactments is executive in nature"); *see* Nev. Const. art. 4 (providing the Legislature with the ability to enact laws); Nev. Const. art. 5, § 7 ("[The Governor] shall see that the laws are faithfully executed."). On the other hand, "'"Judicial Power" is the *authority* to hear and determine justiciable controversies,'" *State v. Second Judicial Dist. Court*, 116 Nev. 953, 962, 11 P.3d 1209, 1214 (2000) (quoting *Galloway*, 83 Nev. at 20, 422 P.2d at 242), "'[t]o declare what the law *is*[,] *or has been.*'" *Berkson*, 126 Nev. at ___, 245 P.3d at 565 (first alteration in original)

(quoting 1 Thomas M. Cooley, *Constitutional Limitations* 191 (8th ed. 1927)).

"In general, the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. ___, ___, 132 S. Ct. 1421, 1427 (2012) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)). The political question doctrine, however, provides for a narrow exception limiting justiciability. *See Zivotofsky*, 566 U.S. at ___, 132 S. Ct. at 1427; *Pershing Cnty. v. Sixth Judicial Dist. Court*, 43 Nev. 78, 89, 183 P. 314, 315 (1919). Under the political question doctrine, controversies are precluded from judicial review when they "revolve around policy choices and value determinations constitutionally committed for resolution to the legislative and executive branches." 16A Am. Jur. 2d *Constitutional Law* § 268 (2013); *see generally Hardy*, 125 Nev. at 296, 212 P.3d at 1106; *Caine v. Robbins*, 61 Nev. 416, 424, 131 P.2d 516, 519 (1942); *Pershing Cnty.*, 43 Nev. at 89, 183 P. at 315.

More specifically, the United States Supreme Court has identified certain features that characterize a case as being nonjusticiable under the political question doctrine:

> "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made;

Supreme Court of Nevaoa

(O) 1947A

6

or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*United States v. Munoz-Flores*, 495 U.S. 385, 389-90 (1990) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). A determination that any one of these factors has been met necessitates dismissal based on the political question doctrine. *See id.* To clarify and expand our limited jurisprudence in this area, we take this opportunity to adopt the *Baker* factors to assist in our review of the justiciability of controversies that potentially involve political questions. With these factors in mind, we examine FPD's arguments concerning NRS 474.200 and the County Commissioner's and Treasurer's withholding decisions.

*NRS 474.200*

FPD argues that the political question doctrine does not apply here because NRS 474.200 contains a clear funding mandate, and mandamus is available to compel governmental compliance with a clear statutory mandate. As noted, once the Legislature has made policy and value choices by enacting statutory law, that law's construction and application is the job of the judiciary. Moreover, a writ of mandamus may indeed be available "to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160. Thus, if a clear statutory directive found in NRS 474.200 were being violated, the political question doctrine would not prevent court review. But we do not read NRS 474.200 to require a full distribution to FPD of all taxes received regardless of previous overpayments.

NRS 474.200 provides, in relevant part, that

> 1. At the time of making the levy of county taxes for that year, the boards of county commissioners shall levy the tax established pursuant to NRS 474.190 upon all property, both real and personal, subject to taxation within the boundaries of the district. . . .
>
> 2. When levied, the tax must be entered upon the assessment rolls and collected in the same manner as state and county taxes. . . .
>
> 3. *When the tax is collected, it must be placed in the treasury of the county in which the greater portion of the county fire protection district is located, to the credit of the district.*

(Emphasis added.) Thus, pursuant to this statute, the taxes collected on behalf of a fire district must be credited to the fire district's funds. NRS 474.200(3). Plainly, funding FPD through its portion of the collected taxes is not discretionary. *Wheble v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 272 P.3d 134, 136 (2012) (explaining that in our de novo review of a statute, we will not look beyond the plain language when it is clear on its face). However, this statute does not contemplate or provide guidance when a refund is due of overpaid, unconstitutionally collected taxes. And while not directly on point, NRS 354.240 allows for the withholding of distribution credit from county taxing units for the purpose of issuing tax refunds necessitated by overpayments. Under NRS 354.220-.250, an applicant may request a refund from the County Commissioners or the Treasurer where "the applicant for refund has a just cause for making the application and the granting of the refund would be equitable." NRS 354.220(4). Once NRS 354.220 has been implicated, "[t]he county may withhold amounts refunded from its subsequent apportionments of

revenues from property tax to the other taxing units in the county." NRS 354.240(2). Accordingly, we conclude that nothing in NRS 474.200 precludes the withholding method followed by the County Commissioners and Treasurer here.

Nevertheless, FPD further contends that *Golconda Fire Prot. Dist. v. Cnty. of Humboldt*, 112 Nev. 770, 774, 918 P.2d 710, 712 (1996), is instructive, because in that case, we determined that taxes collected for fire districts must be deposited into a county treasury and used only for fire protection purposes. *Golconda* dealt with the assertion that Humboldt County wrongfully credited the interest earned on taxes that it collected for the fire protection district to the county's general fund. 112 Nev. at 771, 918 P.2d at 710. The district court determined that Humboldt County's actions were discretionary and thus immune from challenge. *Id.* We determined that because "NRS 355.170 did not confer authority to Humboldt County with respect to the apportionment of [the fire protection district]'s tax proceeds and the interest earned thereon," and "NRS 355.175 does not convey any authority to counties for the investment of government funds," Humboldt County did not retain discretion over the interest due to the fire protection district. *Id.* at 773, 918 P.2d at 711-12. We determined that NRS 474.200 creates a constructive trust that places "fiduciary duties on Humboldt County to administer the taxes collected on behalf of [the fire protection district]." *Id.* at 774, 918 P.2d at 712. Accordingly, we reversed the dismissal order and remanded for an accounting of the tax funds. *Id.* at 775, 918 P.2d at 713.

*Golconda* is distinguishable from this case because it concerns unauthorized apportionment and improper use of interest *legitimately* owed to a fire protection district. While *Golconda* states that "taxes

SUPREME COURT
OF
NEVADA

(O) 1947A

9

collected by fire districts *must* be deposited into a county treasury and used *only* for fire protection purposes," it does not state that improperly collected taxes may not be recovered at a later time. *Id.* at 774, 918 P.2d at 712. Nor is there any argument here that the withholdings were improperly apportioned among the various taxing entities. Moreover, *Golconda* is consistent with the County Commissioners' decision to reclaim the unconstitutionally collected tax distributions. In stating that NRS 474.200 creates a constructive trust that places fiduciary duties on the County to "administer" the taxes collected on behalf of FPD, we acknowledged the County's need to manage the tax distributions. *Golconda*, 112 Nev. at 774, 918 P.2d at 712. Thus, the County Commissioners did not violate NRS 474.200 or act outside of their authority here.

*The withholding decision*

County commissioners have the power to budget, spend, and levy and collect property taxes, NRS 244.150; NRS 244.1505; NRS 244.200-.255, and to "do and perform all such other acts and things as may be lawful and strictly necessary to the full discharge of the powers and jurisdiction conferred on the board." NRS 244.195. In this, county commissioners perform various functions of executive dimension. *See Queen Anne's Conservation, Inc. v. Cnty. Comm'rs of Queen Anne's Cnty.*, 855 A.2d 325, 335 (Md. 2004); *Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 64 A.3d 611, 615 n.8 (Pa. 2013); *see also Ball v. Fitzpatrick*, 602 So. 2d 873, 878 (Miss. 1992) (citing numerous jurisdictions and explaining that "official functions of local governments frequently overlap and local governments may perform executive, legislative, and judicial functions"). The executive power also includes the

general power to, among other things, administer appropriated funds, so long as doing so does not conflict with legislative purpose. 16 C.J.S. *Constitutional Law* § 354 (2005). Particularly, as noted in *Golconda*, while the amounts collected on FPD's behalf belong to FPD, it is the County's duty to administer those collected taxes. *Id.* at 774, 918 P.2d at 712.

Here, under the basic powers set forth above and NRS 354.240, the County Commissioners had administrative authority to withhold distributions from the taxing entities and, within that authority, to decide the precise manner in which to furnish the tax refunds. NRS 474.200 does not govern or impact the refund process, and FPD has pointed to no other authority compelling a different manner of funding. The second *Baker* factor reasons that a court should relinquish a case for nonjusticiability if there is "'a lack of judicially discoverable and manageable standards for resolving'" the issue. *Munoz-Flores*, 495 U.S. at 389 (quoting *Baker*, 369 U.S. at 217). And the third *Baker* factor limits justiciability if it is impossible to decide the issue "'without an initial policy determination of a kind clearly for nonjudicial discretion.'" *Id.* (quoting *Baker*, 369 U.S. at 217). Aside from NRS 354.240, there appears to be no standard or rule for the courts to follow governing how the County Commissioners must handle tax refund liability. Thus, it is up to the County Commissioners to determine how to satisfy the refund and corresponding budgeting obligations, so long as their determination does not conflict with a legislative purpose. FPD points to no conflict, and we thus decline to interject ourselves into the administration of the tax distribution and refund process. *See Montano v. Cnty. Legislature of Suffolk*, 891 N.Y.S.2d 82, 89 (App. Div. 2009) ("In the absence of any allegation that constitutional rights have been violated, or that a

governmental body's action contravenes an applicable statute, law or ordinance, a legislature's governance of its internal affairs . . . should not be subject to court oversight." (internal quotations omitted)). Once it is concluded that the County Commissioners had authority to withhold the disbursements in this case, the precise manner in which they do so must be decided based on policy and economics. "'Courts exist solely to declare and enforce the law, and are without authority as to matters of mere governmental policy.'" *State ex rel. Meshel v. Keip*, 423 N.E.2d 60, 70-71 (Ohio 1981) (Brown, J., dissenting) (emphasis omitted) (quoting *Grogan v. DeSapio*, 83 A.2d 809, at 611-12 (N.J. Super. Ct. Law Div. 1951)); *see generally Fletcher v. Commonwealth*, 163 S.W.3d 852, 860 (Ky. 2005) ("[T]he judicial department should neither inject itself nor be injected into the details of the executive department budget process.").

In sum, if the court system undertook resolution of this case, it would supplant the County Commissioners' legislative and executive powers. The "'lack of judicially discoverable and manageable standards'" and "'the impossibility of deciding [this case] without an initial policy determination of a kind clearly for nonjudicial discretion'" remove this case from our judicial purview. *Munoz-Flores*, 495 U.S. at 389 (quoting *Baker*, 369 U.S. at 217). Accordingly, the district court correctly concluded that FPD's petition presented a nonjusticiable political question.

## CONCLUSION

We conclude that the County Commissioners' decision to withhold collected property taxes from FPD was within its authority in general, and that the precise manner in which it undertook that task is

outside of our purview. Consequently, further judicial review is precluded by the political question doctrine.[1] The district court's order denying extraordinary writ relief is affirmed.

_____ , J.
Cherry

We concur:

_____ , J.
Hardesty

_____ , J.
Parraguirre

---

[1]In light of the resolution of this appeal, we decline to reach the parties' remaining contentions.