138 Nev., Advance Opinion 36

IN THE SUPREME COURT OF THE STATE OF NEVADA

CARYNE SHEA, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN A.S. AND M.S.; VENECIA SANCHEZ, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILD Y.S.; BETH MARTIN, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN R.M. AND H.M.; CALEN EVANS, INDIVIDUALLY AND AS NEXT FRIEND OF HIS MINOR CHILD C.E.; PAULA ARZOIAN, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILD A.A.; KAREN PULEO, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN J.D. JR., JAS. D., AND JAC. D.; CHRISTINA BACKUS, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILD D.B.; CAMERON BACKUS, INDIVIDUALLY AND AS NEXT FRIEND OF HIS MINOR CHILD D.B.; AND ALEXANDRA ELLIS, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN L.E., M.E., AND B.E.,
Appellants,
vs.
THE STATE OF NEVADA; THE STATE OF NEVADA DEPARTMENT OF EDUCATION; JHONE EBERT, NEVADA SUPERINTENDENT OF PUBLIC EDUCATION, IN HER OFFICIAL CAPACITY; AND THE STATE OF NEVADA BOARD OF EDUCATION,
Respondents.

No. 82118



FILED

MAY 26 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order of dismissal in a civil action seeking declaratory and injunctive relief. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed.*

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager and Daniel Bravo, Las Vegas; Educate Nevada NOW and Amanda J. Morgan, Las Vegas,
for Appellants.

Aaron D. Ford, Attorney General, Heidi J. Parry Stern, Solicitor General, Steven G. Shevorski, Chief Litigation Counsel, and Sabrena K. Clinton, Deputy Attorney General, Carson City,
for Respondents.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Appellants are nine parents, individually and as next friends of their minor children, who are students attending public schools in the districts of Clark, Washoe, and White Pine Counties (collectively, Shea). Respondents are the State of Nevada, the Nevada Department of Education, Jhone Ebert, in her official capacity as Nevada Superintendent of Public Education, and the Nevada State Board of Education (collectively, the State), all of whom are responsible for implementing Nevada's public education policy.

Shea filed a complaint against the State alleging that Nevada's system of public education has failed its students, as evidenced by the State's ongoing poor rankings and continued failure to achieve the standards that she contends are required for a sufficient, basic education under Article 11, Sections 1, 2, and 6 of the Nevada Constitution. The district court dismissed the complaint, determining that Shea's claims presented nonjusticiable political questions. We conclude, after clarifying our jurisprudence regarding the political question doctrine, that the plain language of the relevant constitutional provisions demonstrates a clear, textual commitment of public education to the Nevada Legislature by granting the Legislature broad discretionary authority over such matters. Because Shea's claims are inextricably linked to the textual commitment of public education to the Legislature under the Nevada Constitution, we conclude that her claims are nonjusticiable. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Shea filed a complaint for declaratory and injunctive relief in the First Judicial District Court. Among other things, Shea alleged that years of inaction by the State and inadequate funding by the Legislature created a systemic failure within Nevada's public education system. Shea contended that, because of these shortcomings, Nevada's students are ill-equipped to succeed in higher education and future careers. Shea challenged the adequacy of the Nevada public education system, arguing that the amount of funding and other resources provided by the State fall hideously short of the sufficiency required by the Nevada Constitution, state law, and the various benchmarks established by the Nevada Department of Education. Shea alleged that the State's deficiencies created a public education system that fails to meet the standards of a basic, sufficient, uniform, and constitutional education by continually failing to

Supreme Court
of
Nevada

(O) 1947A

3

provide adequate physical facilities and classrooms, access to adequate learning instrumentalities, adequate teaching in classes of appropriate size, and reasonably current basic curriculum.

Shea supported her claims with various statistics[1] that she alleged evince the State's failure to meet the needs of the state's diverse student population. Shea asserted causes of action based on the State's purported failure to provide Nevada's students with a qualitatively and quantitatively sufficient education as required by Article 11, Sections 1, 2, and 6 of the Nevada Constitution (the education clauses).[2] Shea sought declaratory and injunctive relief, requesting that the district court, among other things, (1) declare that a sufficient education is a basic right under the Nevada Constitution, (2) declare that the Nevada public education funding system is inadequate to provide or guarantee the basic right of a sufficient education in violation of the Nevada Constitution, (3) enjoin the State from implementing any school finance system that does not meet the

---

[1]While we take judicial notice of the public statistics cited in Shea's complaint and opposition to the motion to dismiss, addressing any concerns purportedly raised by such statistics rests squarely on the shoulders of the Legislature under the Nevada Constitution for the reasons explained in this opinion.

[2]Additionally, Shea claimed that the State's public education funding system violates students' due process rights under Article 1, Section 8(2) of the Nevada Constitution. Shea fails, however, to offer any cogent arguments on appeal specifically showing how due process rights are implicated here. Accordingly, we decline to consider this issue. *See Gonor v. Dale*, 134 Nev. 898, 902 n.2, 432 P.3d 723, 726 n.2 (2018) (refusing to consider an argument not addressed by appellants on appeal); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued or supported by relevant authority).

sufficiency required by Nevada law and policy, and (4) retain jurisdiction until the court ensures that the State's public education financing system comports with the sufficiency requirements established by the court.

The State moved to dismiss for failure to state a claim pursuant to NRCP 12(b)(5). The State argued, in pertinent part, that Shea's claims presented nonjusticiable political questions. The district court granted the State's motion to dismiss with prejudice based on the political question doctrine. Specifically, the district court determined that Article 11 of the Nevada Constitution textually commits Nevada's education policy to the Legislature. The district court emphasized that the Nevada Constitution grants the Legislature discretion to (1) appropriate the amount of money it deems to be sufficient to fund public school operations and (2) determine what programs and processes should be adopted to provide for a uniform system of public education in Nevada. Additionally, the district court found that the aspirational nature of the education clauses does not mandate or guarantee a public education system of a particular quality or quantity or attainment of specific educational outcomes. The district court also found that it is inappropriate for the judiciary to resolve issues relating to the adequacy of the public education system because it lacks judicially discoverable and manageable standards to effectively resolve such issues and would require the judicial branch to make public policy in violation of the separation of powers guarantee. Shea appealed.

## DISCUSSION

An order granting an NRCP 12(b)(5) motion to dismiss is reviewed de novo. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). A decision to dismiss a complaint under NRCP 12(b)(5) is rigorously reviewed on appeal, with all factual allegations in the complaint presumed true and all inferences drawn in favor of the

complainant. *Id.* at 227-28, 181 P.3d at 672. Dismissing a complaint is appropriate "only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Id.* at 228, 181 P.3d at 672.

*Shea's complaint presents a nonjusticiable political question*

The State argues that while an adequate education of a particular level of quality is good public policy, the education clauses of the Nevada Constitution do not permit the courts to participate in decisions as to what constitutes an adequate education or what level of education funding is sufficient. We agree.

### The political question doctrine

"This court has a long history of requiring an actual justiciable controversy as a predicate to judicial relief." *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 630, 218 P.3d 847, 850 (2009) (internal quotation marks omitted). "The separation of powers doctrine is the most important foundation for preserving and protecting liberty by preventing the accumulation of power in any one branch of government." *Berkson v. LePome*, 126 Nev. 492, 498, 245 P.3d 560, 564 (2010). The Nevada Constitution allocates governmental power between "three distinct and coequal branches of government, as set forth in Article 4 (legislative), Article 5 (executive), and Article 6 (judicial)." *Id.* "The Legislature enacts laws, and in turn, the executive branch is tasked with carrying out and enforcing those laws." *N. Lake Tahoe Fire Prot. Dist. v. Washoe Cty. Comm'rs*, 129 Nev. 682, 687, 310 P.3d 583, 587 (2013) (internal quotation marks omitted). The judicial branch has "the *authority* to hear and determine justiciable controversies" and "to declare what the law *is*[,] *or has been*." *Id.* (alterations in original) (internal quotation marks omitted). "As coequal branches, each of the three governmental departments has inherent

 

power to administer its own affairs and perform its duties, so as not to become a subordinate branch of government." *Berkson*, 126 Nev. at 498, 245 P.3d at 564 (internal quotation marks omitted).

"The political question doctrine stems from the separation of powers essential to the American system of government." *N. Lake Tahoe Fire Prot. Dist.*, 129 Nev. at 686, 310 P.3d at 586. "This doctrine exists for one very important reason—'to prevent one branch of government from encroaching on the powers of another branch.'" *Id.* (quoting *Comm'n on Ethics v. Hardy*, 125 Nev. 285, 292, 212 P.3d 1098, 1103 (2009)). "Under the political question doctrine, controversies are precluded from judicial review when they revolve around policy choices and value determinations constitutionally committed for resolution to the legislative and executive branches." *Id.* (internal quotation marks omitted).

In *North Lake Tahoe Fire Protection District*, this court formally adopted the *Baker*[3] factors to assist in determining whether an issue presents a nonjusticiable political question. *Id.* at 688, 310 P.3d at 587. Specifically, this court considers whether there is

> "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment

---

[3]*Baker v. Carr*, 369 U.S. 186 (1962).

from multifarious pronouncements by various departments on one question."

*Id.* (quoting *United States v. Munoz-Flores*, 495 U.S. 385, 389-90 (1990)); *see also Baker*, 369 U.S. at 217. However, while we recognized that "[t]he political question doctrine . . . provides for a narrow exception limiting justiciability," *N. Lake Tahoe Fire Prot. Dist.*, 129 Nev. at 687, 310 P.3d at 587, we stated that "[a] determination that any one of these factors has been met necessitates dismissal based on the political question doctrine," *id.* at 688, 310 P.3d at 587. This statement did not, however, sufficiently convey the narrowness of this exception.

In *Baker*, the United States Supreme Court recognized that, "[u]nless one of these formulations is *inextricable from the case at bar*, there should be no dismissal for non-justiciability on the ground of a political question's presence." 369 U.S. at 217 (emphasis added). As the Supreme Court persuasively reasoned, "[t]he doctrine . . . is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." *Id.* Therefore, we take this opportunity to clarify *North Lake Tahoe Fire Protection District* and to expressly hold that, in Nevada, dismissal based on the political question doctrine requires a showing that the political question has an *inextricable link* between one of the *Baker* factors and the controversy at issue.

Here, as noted, the district court dismissed the complaint pursuant to NRCP 12(b)(5), citing the political question doctrine. Specifically, the district court concluded that a political question existed based on two of the *Baker* factors: a textual commitment of public education to the Legislature in Article 11 of the Nevada Constitution and, because of the complex nature in administering a statewide system of public education,

"the courts . . . lacked judicially discoverable and manageable standards to effectively resolve those issues."

*The Nevada Constitution makes a textually demonstrable commitment of public education to the Legislature*

When determining whether there is a textually demonstrable commitment of an issue to a coordinate branch of government under the first *Baker* factor, we note that the commitment need not be explicit. *Alperin v. Vatican Bank*, 410 F.3d 532, 549 (9th Cir. 2005). Rather than relying on explicit language, courts "are usually left to infer the presence of a political question from the text and structure of the Constitution." *Id.* (quoting *Nixon v. United States*, 506 U.S. 224, 240 (1993) (White, J., concurring)). In that vein, the State argues that the aspirational nature of Article 11's plain language and the broad discretion granted to the Legislature to establish education policy evince the framers' intent to textually commit education solely to the Legislature. The State contends that the expansive authority granted to the Legislature to frame and enact laws regarding public education provides the Legislature with almost plenary authority, except where expressly limited by the state or federal constitution. We agree.

Unless a constitutional provision is ambiguous, we apply it in accordance with its plain language. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006). Further, "the Nevada Constitution should be read as a whole, so as to give effect to and harmonize each provision." *Id.* at 944, 142 P.3d at 348. The plain language of the education clauses does not create an obligation for the Legislature to provide public education at a particular service level or to provide specific educational outcomes. In *Schwartz v. Lopez,* we previously observed that "the Nevada Constitution contains two distinct duties set forth in two separate sections

SUPREME COURT
OF
NEVADA

(O) 1947A

of Article 11—one to encourage education through all suitable means (Section 1) and the other to provide for a uniform system of common schools (Section 2)." 132 Nev. 732, 749-50, 382 P.3d 886, 898 (2016).

Section 1, we indicated, contains an aspirational legislative duty "to encourage the promotion of" educational endeavors in specified areas and leaves the determination of the types of programs and services, and the quality of education, provided to public school students within the Legislature's broad discretion. *Id.* at 747, 382 P.3d at 897 (emphasis omitted). As we noted, "[u]se of the phrase 'by all suitable means' reflects the framers' intent to confer broad discretion on the Legislature in fulfilling its duty to promote" education. *Id.*

We indicated that Section 2 likewise grants wide discretion to the Legislature, explaining that "[t]he legislative duty to maintain a uniform public school system is not a ceiling but a floor upon which the [L]egislature can build additional opportunities for school children." *Schwartz*, 132 Nev. at 750, 382 P.3d at 898 (internal quotation marks omitted); *see also Campaign for Quality Educ. v. State*, 209 Cal. Rptr. 3d 888, 897 (Ct. App. 2016) (construing the analogous provisions of the California Constitution and stating that the text of these two sections together "speak[] only of a general duty to provide for a [uniform] system of common schools and does not require the attainment of any standard of resulting educational quality"). Of significance, we recognized that "although the debates surrounding the enactment of Article 11 reveal that the delegates discussed the establishment of a system of public education and its funding, they also . . . acknowledged the need to vest the Legislature with discretion over education into the future." *Schwartz*, 132 Nev. at 747, 382 P.3d at 897 (citing *Debates & Proceedings of the Nevada State*

*Constitutional Convention of 1864*, at 565-77 (Andrew J. Marsh off. rep. 1866)).

Similarly, nothing in the plain language of Article 11, Section 6 of the Nevada Constitution requires public education be funded at a certain level or to achieve certain educational outcomes. As we have previously recognized, the education clauses require the Legislature to fund public education, but "the Legislature is not required to . . . fund[ ] education at any particular level." *Rogers v. Heller*, 117 Nev. 169, 176, 18 P.3d 1034, 1038 (2001). To be sure, "concerns about the public funding of education[ ] are of significant statewide importance [to the citizens of this state,] . . . so much so that our Constitution was amended [in 2006] to require the Legislature to sufficiently fund public education before making any other appropriation." *Schwartz*, 132 Nev. at 744, 382 P.3d at 895. But the plain language of Section 6, even as amended in 2006 to prioritize education over other appropriations, explicitly leaves the determination of funding sufficiency to the sole discretion of the Legislature. Indeed, when the people of Nevada amended the Constitution in 2006, they unmistakably gave their representatives in the Legislature unfettered discretion to enact "appropriations to provide the money *the Legislature deems to be sufficient* . . . to fund the operation of the public schools." Nev. Const. art. 11, § 6(2) (2006) (emphasis added); *accord Campaign for Quality Educ.*, 209 Cal. Rptr. 3d at 901 (stating that nothing in the plain language of California's education clauses creates a "constitutional mandate for the Legislature 'to provide funds for each child in the State at some magic level to produce . . . an adequate-quality educational program'" (quoting *Serrano v. Priest*, 569 P.2d 1303, 1307 n.6 (Cal. 1977))). Therefore, we conclude that the plain language of Article 11, Section 6 of the Nevada Constitution vests

sole discretion to determine the sufficiency of Nevada's education funding in the Legislature.

In sum, reading the education clauses as a whole, so as to give effect to and harmonize each provision, shows that the Nevada Constitution confers broad, discretionary authority to the Legislature to (1) encourage various educational pursuits, (2) provide for a uniform system of common schools, and (3) fund education at a level that it deems to be sufficient.[4]

While some courts have concluded that separation of powers does not preclude judicial review of a legislature's public education funding decisions, courts in states with constitutional provisions similar to Nevada's have found these issues to be nonjusticiable political questions because of the textual commitment granting their legislatures broad, discretionary authority over public education. *See Campaign for Quality Educ.*, 209 Cal. Rptr. 3d at 903 (holding that California's education clauses "do not allow the courts to dictate to the [l]egislature, a coequal branch of government, how best to exercise its constitutional powers to encourage education and provide for and support a [statewide] system of common schools"); *King v. State*, 818 N.W.2d 1, 17 (Iowa 2012) (stating that the constitutional "text and history of [Iowa's education] clause indicate a commitment of authority

---

[4]Shea asserts that adequate education funding is a concern to all Nevadans. However, she does not argue that the State's funding mechanism violates Article 11, Section 2 of the Nevada Constitution or the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Cf. Serrano v. Priest (Serrano I)*, 487 P.2d 1241, 1254-55 (Cal. 1971) (holding that the structure of the education funding system in California denied students equal protection). Because Shea did not raise such a challenge in the district court, we do not decide this question on appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . is deemed to have been waived and will not be considered on appeal.").

to the general assembly"); *Woonsocket Sch. Comm. v. Chafee*, 89 A.3d 778, 792, 794 (R.I. 2014) (stating that "the Rhode Island Constitution imposes an affirmative duty upon the General Assembly to promote public schools" and declining to interfere with the legislative duty of implementing a system of education); *see also State ex rel. Harvey v. Second Judicial Dist. Court*, 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001) (explaining that where constitutional language is like that of "a sister state, it is presumably adopted with the construction given it by [its] highest court").

We conclude that the plain language of Nevada's education clauses demonstrates a clear, textual commitment of public education to the Legislature by granting the Legislature broad, discretionary authority to determine public education policy in this state.[5] Thus, even if couched in terms of judicial review, opining as to the adequacy of public education funding and the allocation of resources in this state would require us to

---

[5]Our dissenting colleague relies on decisions from states whose constitutions lack this plain delegation of authority to the state legislature regarding whether the legislature has met its constitutional duties as to education. *See, e.g., Delawareans for Educ. Opportunity v. Carney*, 199 A.3d 109, 140 (Del. Ch. 2018) (quoting the Delaware constitution's Education Clause, which contains no language giving the Delaware Legislature the authority to determine whether it satisfied its constitutional duties under that clause); *Gannon v. State*, 319 P.3d 1196, 1209 (Kan. 2014) (quoting the Kansas constitution, which similarly lacks such language); *Cruz-Guzman v. State*, 916 N.W.2d 1, 7 (Minn. 2018) (same regarding the Minnesota constitution); *Neely v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 752 (Tex. 2005) (same regarding the Texas constitution). Thus, while we agree with the dissent that the educational clauses of Nevada's constitution impose a duty on the Legislature to provide a basic education—as we recognized in this decision and in *Schwartz*, 132 Nev. at 749-50, 382 P.3d at 898—the plain language of Nevada's constitution belies the dissent's conclusion that the Legislature lacks the sole authority to determine whether it met that duty.

venture into issues that entail quintessential value judgments that the Nevada Constitution expressly entrusts to the broad discretion of the Legislature. *See Heller v. Legislature*, 120 Nev. 456, 466, 93 P.3d 746, 753 (2004) (concluding that claims regarding the qualifications of Legislators are not justiciable because the Nevada Constitution expressly commits that function to the Legislature); *see also Woonsocket*, 89 A.3d at 793 (declining to "impos[e] our own judgment over that of the Legislature in order to determine whether a particular policy benefits public education"). We decline to do so. Shea's complaint raises issues that are more properly resolved in the Legislature or by initiative petition. Therefore, we conclude that the district court properly determined that the education clauses demonstrate a textual commitment of public education to the Legislature. The allegations of Shea's complaint are inextricably linked to this constitutional textual commitment.[6] Thus, we affirm the dismissal on this basis.

## *CONCLUSION*

The Nevada Constitution textually commits broad, discretionary authority to the Legislature over public education. We conclude that the claims in Shea's complaint do not present justiciable questions appropriate for adjudication. Consequently, judicial review is

---

[6]Because we conclude that the Nevada Constitution's education clauses demonstrate a clear textual commitment of public education to the Legislature, we need not address whether judicially discoverable and manageable standards exist or whether judicial involvement would require courts to make public policy decisions.

precluded by the political question doctrine. Accordingly, we affirm the district court's order granting the State's motion to dismiss.

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A

CADISH, J., dissenting:

> [E]ducation is perhaps the most important function of state and local governments. . . . It is required in the performance of our most basic public responsibilities . . . . It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.

*Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). Nearly 70 years ago, the United States Supreme Court thus recognized the intrinsic importance of education as a vital function of state government, and the Nevada Constitution has long reflected this truth. *See Guinn v. Legislature of Nev.* (*Guinn II*), 119 Nev. 460, 474-75, 76 P.3d 22, 32 (2003) ("Our State Constitution's framers explicitly and extensively addressed education, believing strongly that each child should have the opportunity to receive a basic education." (footnote omitted)); *Debates & Proceedings of the Nevada State Constitutional Convention of 1864*, at 567 (Andrew J. Marsh Off. Rep., 1866) ("I really think there should be some provision by which the children of the State, growing up to be men and women, should have the privilege secured to them of attending school . . . . We have no right, and we cannot afford to allow children to grow up in ignorance. The public is interested in that matter, and it is one of too great importance to be neglected." (statement of John A. Collins)). In fact, as the State concedes, our Constitution provides Nevadans this right to a basic education. *Guinn v. Legislature of Nev.* (*Guinn I*), 119 Nev. 277, 286, 71 P.3d 1269, 1275 (2003), *overruled on other grounds by Nevadans for Nev. v. Beers*, 122 Nev. 930, 944, 142 P.3d 339, 348 (2006).

Moreover, Nevada citizens do not simply hold this right to a basic education in the abstract; the right imposes "an affirmative mandatory duty upon the legislature" that is "judicially enforceable." *Id.* (quoting *Campbell Cty. Sch. Dist. v. State*, 907 P.2d 1238, 1264 (Wyo. 1995)). This court has long recognized that obligation. *See Schwartz v. Lopez*, 132 Nev. 732, 750, 382 P.3d 886, 898 (2016) ("The legislative *duty* to maintain a uniform public school system is not a ceiling but a floor upon which the legislature can build additional opportunities for school children." (emphasis added and internal quotation marks omitted) (quoting *Jackson v. Benson*, 578 N.W.2d 602, 628 (Wis. 1998))). Because this positive right exists and imposes a judicially enforceable and mandatory affirmative obligation on the Legislature, I cannot agree with the majority's conclusion that the matter before us presents a nonjusticiable political question. Therefore, I must dissent.

Consistent with the axiomatic principle that "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), "the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid,'" *N. Lake Tahoe Fire Prot. Dist. v. Washoe Cty. Bd. of Cty. Comm'rs*, 129 Nev. 682, 687, 310 P.3d 583, 587 (2013) (quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 194-95 (2012)). Because of this emphatic duty, courts have been loath to dismiss active controversies, *see, e.g.*, *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); however, various courts have recognized a "narrow exception" for political questions, *see, e.g.*, *Zivotofsky*, 566 U.S. at 195 (explaining that federal courts "lack[ ] the authority" to decide political questions); *N. Lake Tahoe*

Supreme Court
OF
Nevada

(O) 1947A

2

*Fire Prot. Dist.*, 129 Nev. at 687, 310 P.3d at 587. Under the political-question doctrine, courts will not hear cases "where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). As this doctrine "is one of 'political questions,' not one of 'political cases,'" *Baker*, 369 U.S. at 217, the political question must be inextricably linked to the at-issue controversy to warrant dismissal, Majority Op. at 8, because otherwise, "there should be no dismissal for non-justiciability on the ground of a political question's presence," *Baker*, 369 U.S. at 217.

The majority's conclusion that "[t]he plain language of the education clauses does not create an obligation for the Legislature to provide public education at a particular service level or to provide specific educational outcomes," Majority Op. at 9, contradicts our precedent regarding the right to a basic education, the Legislature's duty to fund that right, and this court's duty to "read [the Nevada Constitution] as a whole, so as to give effect to and harmonize each provision," *see Nevadans for Nev.*, 122 Nev. at 944, 142 P.3d at 348. As discussed above, the education clauses create a constitutional right to a basic education,[1] which the Framers placed

---

[1]At oral argument, the State conceded that the education clauses provide a right to a basic education. While the State attempted to distinguish a "basic" education from a "sufficient" education, it failed to provide cogent arguments to support that distinction. Moreover, the Framers' clear intent was to provide a sufficient education. *See Debates and Proceedings*, *supra*, at 577 (explaining that the framers intended to confer a duty upon the Legislature "to build the educational superstructure, by means of which we can afford every child a *sufficient* amount of instruction to enable it to go creditably through life" (emphasis added)).

special importance on. *Guinn I*, 119 Nev. at 286-87, 71 P.3d at 1275-76. However, the majority does not reconcile that right and the accompanying duties it imposes on the Legislature with the Legislature's obligation to "provide the money the Legislature deems to be sufficient . . . to fund the operation of the public schools in the State." Nev. Const. art. 11, § 6(2). Instead, it simply concludes that the broad discretion regarding education policy and the commitment to fund education at a level the Legislature deems sufficient renders this suit a nonjusticiable political question. But that interpretation does not "give effect to and harmonize each [education] provision." Majority Op. at 12. Rather, the majority's reasoning renders the right to a basic education meaningless, as the Legislature can decline to fund education at any meaningful level with no recourse for the public. *See Cruz-Guzman v. State*, 916 N.W.2d 1, 9 (Minn. 2018) ("Deciding that appellants' claims are not justiciable would effectively hold that the judiciary cannot rule on the Legislature's noncompliance with a constitutional mandate, which would leave Education Clause claims without a remedy. Such a result is incompatible with the principle that where there is a right, there is a remedy."). Moreover, the majority's reasoning also ignores our recognition that the Legislature *must* maintain a "floor" in the education system, *Schwartz*, 132 Nev. at 750, 382 P.3d at 898, and renders such duty illusory, as the Legislature can refuse to fund education at a basic threshold level with no remedy for those left without the fundamental education needed to be successful adults, *see Wyphoski v. Sparks Nugget, Inc.*, 112 Nev. 413, 416, 915 P.2d 261, 263 (1996) (Steffen, C.J., dissenting) (explaining "the fundamental principle of our civil justice system that 'where there is a wrong, there is a remedy'"); *Sparrow & Trench*

*v. Strong*, 2 Nev. 362, 368 (1867) ("If we are to err, it is better to err on that side where there is a remedy than where there is none.").

Instead, I would conclude that while this case undoubtedly contains "political" overtones, it is not a "political question." To harmonize the education clauses—as well as our past precedents—I conclude that the education clauses (1) establish a right to a basic education, (2) impose a duty on the Legislature to reach this "floor" of a basic education while providing the Legislature with broad authority to build upon the floor, and (3) establish the Legislature's ability to provide whatever funding it deems to be sufficient to fund public education, but which must at least be adequate to provide a basic education. While we would not presume to dictate what specific amount of money is necessary to provide a basic education—indeed, the State has a multitude of options to address how to provide a basic education beyond simply increasing funding—it is our duty to determine whether the Legislature is complying with its constitutional obligation to provide a basic education. *See Marbury*, 5 U.S. at 177; *see also Delawareans for Educ. Opportunity v. Carney*, 199 A.3d 109, 175-76 (Del. Ch. 2018) (recognizing that the Delaware Constitution granted "broad and expansive authority" to the legislature over education, but holding that the case was justiciable because "[a] direction to perform a task does not mean that the party performing it judges its own performance," and concluding that "[t]he Education Clause obligates the General Assembly to create and maintain a system of public schools" but "[i]t does not say that the General Assembly has the authority to determine for itself whether its actions meet the constitutional requirement"); *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 778 (Tex. 2005) (explaining that the Texas Constitution "assign[s] to the Legislature a duty [that] both empowers and

obligates" and grants the legislature "the authority to determine the broad range of policy issues involved in providing for public education[,] [b]ut . . . nowhere [does it] suggest[ ] that the Legislature is to be the final authority on whether it has discharged its constitutional obligation"); *Cruz-Guzman*, 916 N.W.2d at 10 (holding that "there is no breach of the separation of powers for the [judiciary] to determine the basic issue of whether the Legislature is meeting the affirmative duty that the Minnesota Constitution places on it").

Accordingly, I would hold that the determination regarding whether the State is satisfying Nevadans' right to a basic education is not a political question, as an overwhelming majority of our sister states have.[2] *See, e.g., Gannon v. State*, 319 P.3d 1196, 1230 (Kan. 2014) (recognizing that "the majority of states" have "conclude[d] that the separation of powers does not preclude the judiciary from determining whether the legislature has

---

[2]As the majority opinion does not address the lack of judicially manageable standards, I note that all the jurisdictions that have found similar cases to be justiciable have noted a plethora of standards that courts may adopt. *See, e.g., Delawareans for Educ. Opportunity*, 199 A.3d at 177 (explaining that the court "should use in the first instance the standards for school adequacy and grade-level proficiency that the political branches have established"); William S. Koski, *Educational Opportunity and Accountability in an Era of Standards-Based School Reform*, 12 Stan. L. & Pol'y Rev. 301, 307 (2001) (explaining that when using standards developed by the political branches, "concerns about judicial fact-finding, expertise, and legitimacy are ameliorated").

met its constitutional obligation to the people to provide for public education"). I therefore dissent.

_____, J.
Cadish